Diane M. BRACHVOGEL, Plaintiff,

v.

BEVERLY ENTERPRISES, INC., et. al., Defendants.

No. CIV.A. 00–1297.

United States District Court, E.D. Pennsylvania.

April 27, 2001.

Debora A. O'Neill, Michael D. Homans, Mager & White, P.C., Philadelphia, PA, for plaintiff.

Joseph P. Paranac, Jr., Wayne E. Pinkstone, Jasinski and Paranac, P.C., Newark, NJ, for defendants.

*MEMORANDUM AND ORDER*

EDUARDO C. ROBRENO, District Judge.

**AND NOW,** this 27th day of April, 2001, upon consideration of defendants' motion for summary judgment, plaintiff's response in opposition, and defendants' reply brief, it is hereby **ORDERED** that defendants' motion for summary judgment (doc. no. 13) is **GRANTED** in part and **DENIED** in part. The court's order is based on the following reasoning:

Plaintiff alleges that, following her complaints of sexual harassment, defendants retaliated against her by dismissing her from her job as a sales manager, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act (the "PHRA").[1] Defendants contend that they are entitled to summary judgment on those claims because plaintiff cannot establish her prima facie case. Under Title VII and the PHRA, in order to establish a prima facie case for retaliation, plaintiff must show that: (1) she engaged in protected activity; (2) she was subject to an adverse employment action; and (3) there was a causal connection between the protected activity and the discharge. *See Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir.1997). Defendants contend that plaintiff has not raised a genuine issue of fact as to whether there was a causal connection between her protected activity and her dismissal. *See* Fed.R.Civ.Pro. 56(c).

According to plaintiff, defendants retaliated against her for two separate instances of protected behavior. On May 1, 1998, she notified her supervisor that two of defendants' employees had sexually harassed her. Following alleged retaliatory actions by defendants following her initial complaint, she notified defendants that she intended to file a complaint with the Equal Employment Opportunity Commission ("EEOC") on August 21, 1998. *See* Pl.'s Ex. 24, at 1. Defendants made the decision to terminate plaintiff sometime in early September. *See* Pl.'s Ex. 4, at 128 (stating

---

1. Claims made under both of these statutes are subject to the same analytical framework. *See Garvey v. Dickinson College,* 775 F.Supp. 788, 800 (M.D.Pa.1991) (citing *Allegheny Housing Rehabilitation Corp. v. Pennsylvania Human Relations Comm'n,* 516 Pa. 124, 129, 532 A.2d 315, 318–19 (Pa.1987)).

that the decision was made roughly four weeks prior to October 9, 1998). In addition to her termination, plaintiff points to defendants' decisions to relieve her of supervisory duties over Account Executives and to prohibit her from attending the company's national meeting of sales managers in Dallas, Texas as evidence of defendants' retaliatory animus.

■ The combination of: (1) temporal proximity; and (2) evidence of an "ongoing antagonism" directed by the employer at the employee is sufficient to raise a genuine issue of fact as to whether there was a causal link between an employee's protected conduct and an adverse employment action. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.2000) ("[T]iming and ongoing antagonism have often been the basis for the casual link [between protected conduct and the adverse employment action]...."). In this case, the fact that the decision to terminate plaintiff was made only a few weeks after she notified defendants that she intended to file a complaint with the EEOC indicates a temporal proximity. *See Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir.1997) (finding that a four month difference was sufficient to establish a causal link). Defendants' conduct in allegedly stripping plaintiff of her supervisory duties and barring her from a national sales meeting suggests an ongoing antagonism in between the time that plaintiff first complained of sexual harassment and her termination.[2]

Defendants argue that plaintiff has failed to show the requisite causal connection because some of the evidence of plaintiff's poor job performance, defendants' stated reason for plaintiff's dismissal, predated her complaints of sexual harassment. They rely on a number of cases where courts found in favor of the employer where evidence of the employee's unsatisfactory performance preceded the employee's complaints of discrimination. *See Shaner v. Synthes*, 204 F.3d 494 (3d Cir. 2000); *Cohen v. Austin*, 901 F.Supp. 945, 946 (E.D.Pa.1995); *Garvey v. Dickinson College*, 775 F.Supp. 788, 792 (M.D.Pa. 1991). Both *Cohen* and *Garvey* are distinguishable because those cases involved non-jury verdicts where the plaintiffs carried the burden of proof by a preponderance of the evidence. In this case, however, the instant motion is one for summary judgment, where plaintiff has pointed to sufficient evidence of temporal proximity and ongoing antagonism to demonstrate the existence of a genuine issue of fact that precludes entry of judgment in favor of defendants. *See* Fed.R.Civ.Pro. 56(c).[3]

The other case upon which defendants rely, *Shaner v. Synthes*, 204 F.3d 494 (3d Cir.2000), is also distinguishable. In that case, unlike this one, the Third Circuit held that there was neither a temporal proximity between the plaintiff's protected activity and the alleged retaliation nor evidence suggesting that the employer held a discriminatory animus toward the employee. Accordingly, given the temporal proximity between plaintiff's protected activity and her termination and the alleged ongoing antagonism directed at plaintiff, this

---

2. In *Farrell*, the Third Circuit noted that evidence of pretext is also admissible "to establish the [causal] connection." *Id.* at 281. Therefore, the court relies as well on the evidence, discussed *infra*, by which plaintiff raises a genuine issue of fact as to whether defendants' stated reason for terminating her was pretext for retaliation.

3. In *Cohen*, the plaintiff survived a motion for summary judgment on his retaliation claim. *See Cohen*, 901 F.Supp. at 946. *Cohen* thus demonstrates how application of the two different standards can produce different outcomes when applied to the same set of facts.

court finds that plaintiff has pointed to the existence of a genuine issue of material fact as to whether there was a causal connection between her protected activity and her termination.

■ Defendants also contend that they are entitled to summary judgment because, in their view, plaintiff has failed to raise a genuine issue of fact whether defendant's stated nondiscriminatory reason for terminating plaintiff was merely a pretext for retaliation. *See Shaner*, 204 F.3d at 501 (stating that, after the employer articulates a non-retaliatory reason for its action, the burden shifts back to the employee to show that the employer's stated reasons were "not its true reasons, but were a pretext for discrimination"). Plaintiff points to two pieces of evidence in particular that, viewed in the light most favorable to plaintiff, *see id.* at 500, permits an inference that defendants' stated reason was pretextual. First, a contemporaneous memorandum prepared by plaintiff's supervisor articulating the supervisor's reasons for plaintiff's termination provides that one of those reasons for the termination is that plaintiff relayed information to certain other employees that had been told to plaintiff by her supervisor in confidence. *See* Pl.'s Ex. 28, at 0000122. Plaintiff points to evidence suggesting that defendants made the decision to fire her before she could have disclosed this information to her co-workers.[4] Given the plaintiff's version of the chronology of events, an inference may be drawn that defendants' reasons as stated in the memorandum were pretext for discrimination.

Second, one of the two written reprimands that plaintiff received prior to her termination, but after she first complained

of sexual harassment, was for allegedly failing to submit paperwork concerning newly hired employees. Plaintiff received this reprimand despite the existence of conflicting evidence that plaintiff actually did send the paperwork. Defendants' human resources manager, Barbara Toth, spoke with the newly hired employee, who stated that she "could account for one time of knowing that [the paperwork] was mailed." *See* Pl.'s Ex. 20 at 90. Defendants' decision to discipline plaintiff in the face of the conflicting evidence could support plaintiff's claim that defendants' fabricated a negative performance record in retaliation for her complaints of sexual harassment. The court thus finds that these two pieces of evidence raise a genuine issue of fact whether defendants' stated reason for discharging plaintiff was pretext for retaliatory discrimination.

Defendants' reliance on *Shaner* in support of its position that plaintiff has failed to raise a genuine issue of fact with respect to pretext is misplaced. In *Shaner*, as in the instant case, the plaintiff employee had received a somewhat negative performance evaluation prior to filing a complaint with the EEOC. *Shaner*, however, does not stand for the absolute proposition that an employer is always entitled to summary judgment whenever it can point to evidence of the employee's poor job performance prior to her complaint of discrimination in support of its position that the employee was fired for continued poor performance. Rather, the existence of precomplaint evaluations containing performance deficiencies is a factor that, depending on the circumstances, may rebut a claim of pretext.

4. In her deposition, plaintiff's supervisor acknowledged that the decision to fire plaintiff was made sometime in early September. *See* Pl.'s Ex. 4, at 128. Plaintiff was on vacation the week of September 18, 1998, and claims that she only learned of the supposedly confidential information after she returned to work on September 25, 1998.

Moreover, the plaintiff in *Shaner* attempted to use his negative evaluation as evidence of retaliation, despite the fact that he had received an almost identical evaluation before the employer even knew he had multiple sclerosis, let alone complained of discrimination. The court rejected that argument, as well as all of the other evidence that the plaintiff claimed pointed to discrimination,[5] and concluded that "there is not sufficient evidence to permit a reasonable factfinder to conclude that the company acted with discriminatory or retaliatory intent with respect to *any* of the challenged conduct." *Shaner*, 204 F.3d at 502 (emphasis in original).

By contrast, in the instant case, in addition to the evidence of pretext discussed above, plaintiff points to other evidence of retaliation in addition to her termination, including defendants' decisions to relieve her of supervisory duties over Account Executives and to prohibit her from attending the company's national meeting of sales managers in Dallas, Texas. Therefore, the evidence upon which plaintiff relies in this case is far more substantial than that upon which the court in *Shaner* granted summary judgment to the employer. Accordingly, the court finds that defendants are not entitled to summary judgment on plaintiff's retaliation claims under Title VII and the PHRA.

■ Defendants also seek summary judgment on plaintiff's claims for breach of the implied covenant of good faith and fair dealing. "[T]here is no claim under Pennsylvania law for a breach of a duty of good faith and fair dealing where the employment relationship is at-will." *Tiscornia v. Sysco Corp.*, No. CIV.A. 95–3178, 1995 WL 574334, at *3 (E.D.Pa. Sept.26, 1995). Plaintiff does not point to any evidence indicating that her employment with defendants was not at-will, and otherwise does not oppose defendants' motion as to this claim. Therefore, defendants' motion with respect to plaintiff's claims for breach of the implied covenant of good faith and fair dealing is granted.

■ Defendants are also entitled to summary judgment on plaintiff's claim for detrimental reliance. Pennsylvania does not recognize a cause of action for detrimental reliance in the context of an at-will employment relationship. *See Woomer v. Landis & Gyr, Inc.*, No. CIV.A. 97–2074, 1997 WL 256940, at *2 (E.D.Pa. May 14, 1997)(holding that no cause of action for detrimental reliance exists where defendant allegedly induced plaintiff to leave his secure position with his previous employer by promising "a career path, business acquisition, and growth").

■ Finally, plaintiff does not point to any evidence that raises a genuine issue of fact whether Beverly Enterprises Pennsylvania, Inc. exercised control "over the manner and means of her employment...." *Jeffries v. Deloitte Touche Tohmatsu Int'l*, 893 F.Supp. 455, 459 (E.D.Pa.1995). Beverly Enterprises Pennsylvania, Inc. is thus entitled to summary judgment with respect to all of plaintiff's claims.

---

**5.** This evidence included, in addition to the poor work performance evaluations, the denial of the computer training,, the relocation of his office after he complained that the temperature in his prior office aggravated his medical condition, alleged manipulations of the temperature in his new office by unknown persons while he was at lunch, the employer's request that he attend counseling, and his termination. *See Shaner*, 204 F.3d at 501. It should be noted that plaintiff in *Shaner* was terminated only after he was unable to return to work because of his medical condition following a six month medical leave of absence. *See id.* at 499. Therefore, the employer did not contend that the plaintiff was terminated because of his poor work performance, but rather because he was unable to work.

.

**334**

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part.

**AND IT IS SO ORDERED.**