**Irene PREOBRAZHENSKAYA,**
**Appellant,**

v.

**MERCY HALL INFIRMARY,**
**a/k/a Sisters of Mercy.**

No. 02–3190.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) June 27, 2003.

Decided July 30, 2003.

Before SLOVITER and AMBRO, Circuit Judges, and PETRESE B. TUCKER,* District Judge.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Irene Preobrazhenskaya appeals the grant of summary judgment for defendant Mercy Hall Infirmary on her claim of retaliatory discharge in violation of the Fair Labor Standards Act and the dismissal of her claims for breach of contract, detrimental reliance, and a "public policy based course of action." Our review is plenary.

### I.

As the parties are familiar with the facts, we refer only briefly to those necessary to our discussion.

Preobrazhenskaya was hired in May 1992 to work as a licensed practical nurse ("LPN") in Mercy Hall, the infirmary ward of the convent of the Sisters of Mercy where nuns, family members, and others receive residential medical care, despite the fact that she did not have an official certification or LPN license. When she became a permanent employee, she was to work five eight-hour days, for a total of 40 hours per week. Because Mercy Hall patients require care around the clock, employees work varying shifts and are permitted to trade shifts with one another. Overtime rate of pay is time and a half of the ordinary base rate for that employee.

In 1998, Preobrazhenskaya traded shifts with one of her co-workers. Preobrazhenskaya worked eight-hour shifts on April 17, 1998 and May 12, 1998. In exchange, her co-worker worked shifts on April 29 and 30, 1998, for which Preobrazhenskaya was originally scheduled. These shift changes were approved by her supervisor, Margaret Schlicht–Creehan. Due to the shift changes, Preobrazhenskaya worked double shifts on April 17 and May 12 and her hours exceeded the standard 40 hour per week schedule. She sought compensation at the overtime rate of time and a half for the extra eight hours in each of the two pay periods. Mercy Hall refused to pay the overtime rate and there was considerable correspondence in this connection.

Schlicht–Creehan wrote to Preobrazhenskaya that Preobrazhenskaya's husband (her counsel in this case) telephoned on the evening of March 4, 1999 and used abusive language toward the staff person who handled the telephone call. Schlicht–Creehan wrote that although Preobrazhenskaya

* Hon. Petrese B. Tucker, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

could not have anticipated that her husband would make that type of statement on the phone, she should be aware that if it happened again, she "will be held accountable to the Sisters of Mercy" and would be discharged. Supp.App. at 78. The ensuing correspondence between Schlicht–Creehan and Preobrazhenskaya grew more and more antagonistic, with Preobrazhenskaya's characterizing Schlicht–Creehan's allegation as "yet another retaliatory act, in a series of which had been engaged in the past" which was intended to inflict emotional distress on Preobrazhenskaya. Supp.App. at 79.

During the exchange of letters regarding Preobrazhenskaya's husband and the March 4, 1999 telephone incident, Preobrazhenskaya filed a complaint on March 23, 1999 with the Wage and Hour Division of the U.S. Department of Labor in Pittsburgh, Pennsylvania, claiming that she had not been paid at the overtime rate for the hours she worked on April 17, 1998 and May 12, 1998 in excess of her 40 hour per week schedule. The next day, Donna Belloma of the Wage and Hour Division advised William Milburn, a volunteer consultant working as the Advisor on Financial and Legal Affairs for the Sisters of Mercy, that Preobrazhenskaya was entitled to $81.12 in overtime pay. Milburn then advised Sister DeLillis Laboon, Schlicht–Creehan's supervisor, of Belloma's view about Preobrazhenskaya's entitlement to overtime pay, and he suggested that Sister Laboon make it clear to Preobrazhenskaya that switching shifts without authorization would be cause for dismissal. Within a few days, Belloma advised Preobrazhenskaya that the Sisters of Mercy would be paying the overtime. Mercy Hall then instituted a policy stating that the Sisters of Mercy are not responsible to pay any overtime that may be incurred as a result of trading shifts.

Preobrazhenskaya was later paid $81.12 for the overtime hours. However, she alleges that Schlicht–Creehan reduced her schedule in the following pay period to four days per week, instead of the standard five days, so that the Sisters of Mercy would "get back" the money paid to Preobrazhenskaya. Preobrazhenskaya also complained about not being paid for the Good Friday holiday. She was notified by Brother Charles Mrozinski that she should discuss all scheduling concerns with her supervisor, Schlicht–Creehan. Nonetheless, Preobrazhenskaya wrote again to Brother Charles about her schedule and overtime.

On July 27, 1999, Sister Susan Welsh, Vice President and Treasurer of the Regional Community of Pittsburgh, Sisters of Mercy of the Americas, discharged Preobrazhenskaya by letter stating, *inter alia,* that their working relationship was no longer "compatible."

Preobrazhenskaya filed a complaint on July 10, 2001, alleging that the Sisters of Mercy violated the Fair Labor Standards Act ("FLSA") by denying overtime pay, readjusting personal and vacation days, and terminating her employment. At her deposition, Preobrazhenskaya stated that she believed she was terminated in retaliation for reporting her employer to the Department of Labor Wage and Hour Division.

Preobrazhenskaya amended her complaint with leave of court to include three additional claims alleging breach of contract, detrimental reliance, and violation of public policy. Mercy Hall moved to dismiss Preobrazhenskaya's state law claims and for summary judgment of her claims under the FLSA. The District Court granted Mercy Hall's motions, adopting the Report and Recommendation of the Magistrate Judge.

Preobrazhenskaya filed a timely appeal. This court has jurisdiction under 28 U.S.C. § 1291.

## II.

We review a grant of summary judgment *de novo*. *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 (3d Cir.1998). We must examine all of the evidence in the light most favorable to the nonmoving party to determine if there is a genuine issue of material fact. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995). In determining whether a dispute is genuine, the court's function is to decide "whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In order to establish a *prima facie* case of discriminatory retaliation, a plaintiff must show that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against her, and (3) there was a causal link between the plaintiff's protected action and the employer's adverse action. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir.1997) (discussing elements of discriminatory retaliation in context of Title VII claim).

■ The Magistrate Judge concluded that Preobrazhenskaya failed to establish a *prima facie* case because she did not show the causal link between her protected activity (contacting the Department of Labor's Wage and Hour Division) and her employer's adverse action (firing her). Sister Welsh provided a verification stating that she was solely responsible for the decision to terminate Preobrazhenskaya and that at that time she was unaware that Preobrazhenskaya had contacted the Department of Labor. In *Jones v. School District of Philadelphia*, 198 F.3d 403, 415 (3d Cir.1999), we affirmed a grant of summary judgment on a retaliation claim under Title VII where there was no evidence that the principals who made the decision to fire the plaintiff were aware of the protected action. Applied to the facts here, the Magistrate Judge stated that "the mere fact that [Milburn or Sister Laboon] may have reported to Sister Susan [Welsh] and were privy to certain information does not necessarily mean that they divulged that information to Sister Susan or had any input into the decision to terminate [Preobrazhenskaya]." App. at 33.

Arguably, there was some "temporal proximity" between Preobrazhenskaya's call to the Department of Labor and her dismissal four months later. However, the proximity was not " 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action,' " *Kachmar*, 109 F.3d at 177 (quoting *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir.1990)), particularly because in this case there is ample evidence of the deterioration of the relationship between the parties arising from causes other than Preobrazhenskaya's complaint to the Department of Labor.

It is significant for our review that the record does not reveal any direct evidence establishing that Sister Welsh knew that Preobrazhenskaya had contacted the Department of Labor. Moreover, the "pattern of antagonism" that grew does not implicate Sister Welsh, who was the person who actually made the decision to fire Preobrazhenskaya. *See Kachmar*, 109 F.3d at 177 ("where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference"). Thus, the District Court did not err in holding that Preobrazhenskaya failed to meet the required third prong for establishing a prima facie case of retaliation—establishing a causal

link between her protected conduct and her termination.

## III.

■ Preobrazhenskaya appeals the dismissal of her claims for relief under theories of breach of contract, detrimental reliance, and violation of public policy. Our review is plenary.

There is a strong presumption of employment at will under Pennsylvania law for all employer-employee relationships. *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 435 (3d Cir.1986). The employee or the employer can end the employment relationship at any time for any reason. *Id.* This presumption of at-will employment can be overcome by showing that there is an express contract between the parties, with a provision stating that an employee can only be terminated "for cause." *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334, 336–37 (1988). An "implied-in-fact" contract can also suffice, if additional consideration passes from the employee to the employer "from which the court can infer the parties intended to overcome the at-will presumption." *Raines v. Haverford College*, 849 F.Supp. 1009, 1012 (E.D.Pa.1994). However, the plaintiff has the burden to present facts to overcome the at-will presumption. *Murray*, 782 F.2d at 435.

Preobrazhenskaya did not present facts to overcome the presumption of at-will employment. She had no express contract, and the oral promise she received from her employer that she could remain working for "as long as her performance was satisfactory" is considered too vague to create employment for a term. *See, e.g., id.* (holding that assurances to employ plaintiff "[a]s long as I wanted and they wanted me and I was satisfactory to them" could not, as a matter of law, overcome presumption of at-will employment). Preo-

brazhenskaya's argument that the provisions contained in the employee manual (stating that "permanent" employment begins after a 90-day probationary period and providing a list of reasons in the Rules of Conduct why an employee may be dismissed from employment) constitute a written contract with her employer also fails under Pennsylvania law. As the Magistrate Judge noted, "in order for an employee handbook to constitute a contract, it must contain a clear indication that the employer intends to overcome the at-will presumption." App. at 20 (quoting *Ruzicki v. Catholic Cemeteries Ass'n of Diocese of Pittsburgh*, 416 Pa.Super. 37, 610 A.2d 495, 497 (1992)). In the employee handbook, the Rules of Conduct section contains a statement that the rules are intended to maintain "a pleasant, orderly, and safe place to work." App. at 5. We have no basis to overturn the Magistrate Judge's finding that the employee manual serves an informational, rather than a contractual, purpose.

Preobrazhenskaya argues that she provided sufficient additional consideration to imply an employment contract when she left her previous employment to take the position with the Sisters of Mercy. Leaving one job to take another one has been held to be "simply a reasoned choice of a new career goal" rather than additional consideration implying an employment contract. *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 315 (1986), *overruled on other grounds, Clay v. Advanced Computer App., Inc.*, 522 Pa. 86, 559 A.2d 917 (1989).

Because no implied contract can be found from the facts of the case, the District Court also properly dismissed the claim for detrimental reliance. Pennsylvania does not recognize a cause of action for detrimental reliance in the context of an at-will employment relationship. *Brachvo-*

*gel v. Beverly Enterprises, Inc.*, 173 F.Supp.2d 329, 333 (E.D.Pa.2001) (citing *Woomer v. Landis & Gyr, Inc.*, 1997 WL 256940, at *2 (E.D.Pa. May 14, 1997)).

■ As to Preobrazhenskaya's remaining claim, we have held that Pennsylvania law does not recognize a common law cause of action for violating public policy when there is a statutory remedy. *See Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918–19 (3d Cir.1982); *Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221, 224 n. 3 (3d Cir.1984) ("The availability of a [statutory] remedy precludes other common law remedies even where the statute is not invoked."). The Magistrate Judge pointed out that Preobrazhenskaya's claim of violation of public policy stems from the same set of facts as the claim under the FLSA; in fact, it is the same claim brought under different theories of recovery. Whether or not Preobrazhenskaya's FLSA claim can succeed is irrelevant; "[i]t is the existence of the remedy, not the success of the statutory claim, which determines preemption." *DeMuro v. Philadelphia Housing Authority*, 1998 WL 962103, at *5 (E.D.Pa.1998) (quoting *Jacques v. AKZO Int'l Salt, Inc.*, 422 Pa.Super. 419, 619 A.2d 748, 753 (1993)). The District Court thus did not err in dismissing the public policy claim on the basis of applicable law, where a statutory remedy under the FLSA was available.

Finally, Preobrazhenskaya complains of the District Court's decision denying discovery on the new counts of the amended complaint. The decision to expand or limit discovery is within the discretionary power of the district court, and the standard of review for this court is to determine whether the district court abused its discretion. *In re Orthopedic Bone Screw Product Liability Litig.*, 264 F.3d 344, 365 (3d Cir.2001).

The District Court denied Preobrazhenskaya's motion for additional time for dis-

covery on the claims added in the amended complaint while it considered the defendant's motion to dismiss the claims. Considering that five months of discovery had already taken place, and that the additional claims were based on the same set of facts alleged in the original complaint, the District Court acted within its discretion in denying Preobrazhenskaya's motion for additional time for discovery.

Similarly, the District Court had discretion to permit defendant to take Preobrazhenskaya's deposition a second time. We see no evidence in the record that the District Court acted unreasonably in granting the Sisters of Mercy's motion to depose Preobrazhenskaya a second time.

V.

For the reasons stated above, we will affirm the District Court's grant of summary judgment on the claim of retaliatory discharge under the FLSA, and affirm the dismissal of the claims for breach of contract, detrimental reliance, and violation of public policy.