IN THE COMMONWEALTH COURT OF PENNSYLVANIA

FP Willow Ridge Associates, L.P.,    :
    :
               Appellant    :
    :
           v.    : No. 1846 C.D. 2016
    : Argued: June 5, 2017
Allen Township and Northampton    :
Borough    :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge

OPINION
BY JUDGE WOJCIK               FILED: July 6, 2017

FP Willow Ridge Associates, L.P., (Willow Ridge) appeals from an order of the Court of Common Pleas of Northampton County (trial court) that granted Allen Township's (Township) motion for summary judgment against Willow Ridge and dismissed as moot Northampton Borough's (Borough) motion for summary judgment. Willow Ridge contends that the trial court erred in granting the Township's motion for summary judgment on the grounds that Willow Ridge did not make a timely claim within the three-year period as set forth in Section 1 of the act commonly referred to as the Refund Act[1] and that Willow Ridge was not entitled to a refund under the Municipality Authorities Act (MAA)[2] or Refund Act. For the reasons that follow, we affirm on alternative grounds.

_____

[1] Act of May 21, 1943, P.L. 349, *as amended*, 72 P.S. §5566b.

[2] 53 Pa. C.S. §§5601-5623.

# I. Background

Appellant Willow Ridge is the current developer and owner of an apartment community known as The Residences at Willow Ridge, located at 419 Harrison Court in Allen Township, Northampton County, Pennsylvania, and consisting of 216 one- and two-bedroom apartments, a clubhouse and a maintenance garage (apartment complex), which necessitated sewer service.

The Township owns and operates a sewage collection and transmission system within the Township; the Borough owns the plant that treats the sewage. Reproduced Record (R.R.) at 311a. The Township and Borough's (collectively, Appellees) relationship is memorialized in an Intermunicipal Sewer Service Agreement (Intermunicipal Agreement), dated March 8, 2001. R.R. at 311a-334a. Pursuant to the Intermunicipal Agreement, an equivalent dwelling unit (EDU) represents the metered volume of water used per quarter by any single family dwelling connected to the sewer system; one EDU "shall be considered 260 [gallons per day]." R.R. at 314a. By Resolution #2004-01, the Township set the rate for each sewer tapping fee at $3,000. R.R. at 335a. "For residential properties, one dwelling unit shall be considered one [EDU] for the purposes of this fee." R.R. at 335a.

Prior to Willow Ridge's acquisition of the apartment complex, its predecessor initially requested sewer service from the Township for 270 equivalent dwelling units (EDUs). R.R. at 349a. An interim successor entered into a sanitary sewer service agreement (2005 Agreement) with the Township contracting for 270 EDUs of sewage disposal services at the rate of $3,000 per EDU, for a total of $810,000. R.R. at 350a-359a. Thereafter, the Township and Willow Ridge entered into a sanitary sewer service agreement (2011 Agreement) agreeing to the

2

same $3,000 tapping fee per EDU.[3]  R.R. at 299a-305a.

On March 31, 2011, Willow Ridge paid the Township $3,000 for 218 EDUs[4] of sanitary sewer capacity.  R.R. at 228a-229a.  In the letter accompanying the payment, Willow Ridge stated, "As we have explained previously, we believe that each apartment unit will require less than one (1) EDU and our capacity analysis confirms that the correct calculation of capacity is one (1) EDU per every three units."  R.R. at 228a.  Willow Ridge advised that the "payment is made subject to the design capacity analysis which [it] intend[s] to submit and which we hope will result in a reduction in the total cost of our EDUs."  R.R. at 228a.

On November 22, 2013, Willow Ridge initiated a complaint followed by two amended complaints against Appellees alleging that they overestimated the number of EDUs required to service the apartment complex.  The second amended complaint set forth three counts:  Count I – Declaratory Judgment under the Refund Act; Count II – Breach of Contract; and Count III – Violation of the MAA.  While this litigation was pending, on May 14, 2014, Willow Ridge filed a claim for refund with the Township.  R.R. at 306a.

In response, the Township filed three sets of preliminary objections to the complaints, which ultimately resulted in the trial court's dismissal of Count III – the MAA claim.  R.R. at 119a.  The trial court determined that the MAA claim was time-barred by a two-year statute of limitations.  R.R. at 119a.

[3] The 2011 Agreement references 232 EDUs, not 218 EDUs.  While Willow Ridge takes issue with this number, the Township asserts that "[t]his figure is clearly a clerical error." Township's Brief at 5 n.5.

[4] This represents 216 apartment units, one clubhouse and one maintenance garage.  R.R. at 25a, 42a, 133a.

3

The Township also filed a motion for judgment on the pleadings, which the trial court granted, resulting in the dismissal of Count II – the breach of contract claim. R.R. at 124a. The trial court explained that, although Willow Ridge framed the issue as a breach of contract claim, it was in essence a tort claim barred by a two-year statute of limitations. R.R. at 124a-125a.

The trial court permitted Willow Ridge to proceed on its remaining count (Count I), in which it sought declaratory judgment and monetary relief under the Refund Act. *See* R.R. at 126a-127a. After pleadings closed, Appellees each moved for entry of summary judgment on numerous grounds.

On October 14, 2016, the trial court granted the Township's motion and entered judgment in favor of the Township and against Willow Ridge, and it dismissed the Borough's motion as moot. Trial Court Opinion, 10/14/16, at 1-11; R.R. at 129a-139a. The trial court explained that Willow Ridge failed to toll the statute of limitations by not following the Refund Act's statutory procedure, which required an aggrieved party to file a written and verified claim within three years as a necessary predicate to filing an action in the trial court. Trial Court Opinion, 10/14/16, at 7; R.R. at 135a; *see* Section 1(a) of the Refund Act, 72 P.S. §5566b(a); Section 2 of the Refund Act, 72 P.S. §5566c. Although Willow Ridge complained of the total number of EDUs upon which its charges were based, the trial court found that Willow Ridge never made a written and verified claim for a refund until after the expiration of the three-year period. Trial Court Opinion, 10/14/16, at 10; R.R. at 138a. Consequently, the trial court determined that the statute of limitations was never tolled. Trial Court Opinion, 10/14/16, at 10; R.R. at 138a. Thus, the trial court granted the Township's motion for summary judgment on this basis, which was dispositive of the action *in toto*, and did not address the

4

Township's other grounds for summary judgment.  Trial Court Opinion, 10/14/16, at 11; R.R. at 139a.

From this decision, Willow Ridge filed a motion for reconsideration, which the trial court denied.[5]  Willow Ridge also filed an appeal with this Court on November 4, 2016, and, at the direction of the trial court, a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b).  In its Rule 1925(b) statement, Willow Ridge asserted that the trial court erred or abused its discretion by:  holding that the Refund Act imposes a three-year statute of limitations, as opposed to a notification period; finding Willow Ridge's complaint did not constitute a timely written and verified claim for a refund; granting summary judgment when disputed issues of fact remained; treating its complaint as a claim for tax refund rather than a claim for refund of excess permit fees; and, not following *stare decisis*.  R.R. at 199a-200a.

In the amended Pa. R.A.P. 1925(a) opinion that followed, the trial court stated that it incorrectly imposed a three-year "statute of limitations," and acknowledged that Section 1 of the Refund Act is a statute of notification, not of limitations.  It further observed that absent a showing of prejudice on the part of the municipality, a party's failure to notify within a statutory time frame will not in all cases be a bar to such action.  Trial Court Opinion, 12/20/16, at 2.

Nevertheless, the trial court opined that the grant of summary judgment against Willow Ridge was appropriate because it "would have come to

_____

[5] On December 6, 2016, the trial court vacated its October 14, 2016 order and denied the Township's motion for summary judgment and listed the matter for hearing.  R.R. at 202a. Then, on December 20, 2016, the trial court rescinded the December 6, 2016 order and withdrew the December 7, 2016 scheduling order, thereby reinstating the October 14, 2016 order, upon determining that it was without jurisdiction to proceed on the motion for reconsideration.  R.R. at 224a.

the same disposition based on case law establishing the validity of the sewer tapping fees of a fixed amount per residence under the MAA." Trial Court Opinion, 12/20/16, at 3. The trial court continued that, under the MAA, Appellees were permitted to treat apartments in a manner identical to other types of residential housing when determining the capacity required for sanitary sewer service. *Id.* "It would have been an abuse of discretion for the [trial court] to deem the rates charged . . . unreasonable." *Id.* This appeal now follows.[6]

## II. Issues

On appeal, Willow Ridge contends that the trial court erred by granting the Township's motion for summary judgment on two grounds. First, Section 1 of the Refund Act is not a statute of limitations, but a statute of notification. Notwithstanding, Willow Ridge sufficiently notified the Township of its refund claim within the three-year notification period by filing its complaint.

Second, the Township was not entitled to summary judgment as there are material facts in dispute warranting a trial on the merits. Willow Ridge contends the Township overcharged Willow Ridge for sanitary sewer service and is not entitled to the tapping fees charged. According to Willow Ridge, the Township's tapping fee violates the MAA because the number of tapping fees required for its apartment complex is not reasonably proportional to the value of

---

[6] This Court's review of an order granting summary judgment is limited to considering whether the trial court erred or abused its discretion. *Hoover v. Stine*, 153 A.3d 1145, 1153 n.9 (Pa. Cmwlth. 2016). "Summary judgment may only be granted when, after examining the record in the light most favorable to the non-moving party, the record clearly demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

service rendered. Consequently, Willow Ridge is entitled to a refund under the Refund Act and the trial court erred in granting the Township's motion for summary judgment.

### III. Discussion
### A. Refund Act – Statute of Notification

First, Willow Ridge contends the trial court erred in granting the Township's motion for summary judgment and specifically ruling that Willow Ridge did not timely make a claim within the three-year period set forth in Section 1 of the Refund Act. Willow Ridge asserts that the Refund Act is not subject to a three-year statute of limitations; rather, the Refund Act carries a three-year notification requirement. Willow Ridge gave requisite notice by filing its complaint within three years of making its overpayment. According to Willow Ridge, the complaint constitutes a "written and verified claim" for purposes of the Refund Act. Thus, there was no factual or legal basis for the trial court to conclude that Willow Ridge's claim was time-barred by a statute of limitations.

Section 1 of the Refund Act provides:

> (a) Whenever any person or corporation of this Commonwealth *has paid* or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, license fees, penalties, fines or any other moneys *to which the political subdivision is not legally entitled*; then, in such cases, the proper authorities of the political subdivision, *upon the filing with them of a written and verified claim for the refund of the payment*, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. *Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political*

7

*subdivision involved, within three years of payment thereof.*

(b) *The right to a refund afforded by this act may not be resorted to in any case in which the taxpayer involved had or has available under any other statute, ordinance or resolution, a specific remedy by way of review, appeal, refund or otherwise, for recovery of moneys paid* as aforesaid, unless the claim for refund is for the recovery of moneys paid under a provision of a statute, ordinance or resolution subsequently held, by final judgment of a court of competent jurisdiction, to be unconstitutional, or under an interpretation of such provision subsequently held by such court, to be erroneous.

(c)(1) Any taxpayer who has paid any tax money to which the political subdivision is not legally entitled shall receive interest on such sum of money. The political subdivision shall pay interest on such sums at the same rate and in the same manner as the Commonwealth is required to pay pursuant to section 806.1 of the act . . . known as "The Fiscal Code.[7]"

(2) For purposes of this subsection, the term "political subdivision" means a county, city, borough, incorporated town, township, home rule municipality, school district, vocational school district and county institution district.

72 P.S. §5566b (emphasis added). Section 2 of the Refund Act provides:

*In the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund* of taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, or refusal or failure to pay interest as required by section 1, *then the aggrieved person or corporation shall have the right to bring suit for and recover* any such

---

[7] Act of April 9, 1929, P.L. 343 added by Act of April 8, 1982, P.L. 258, *as amended*, 72 P.S. §806.1.

> taxes, interest, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, subject to the limitation herein provided, by instituting an action in assumpsit in the court of common pleas of the county wherein such political subdivision is located.

72 P.S. §5566c (footnote omitted) (emphasis added).

This Court has held that the Refund Act's three-year provision is a statute of notification, not a statute of limitations. *Borough of Malvern v. K.R.I. Corp.*, 570 A.2d 633, 636 (Pa. Cmwlth. 1990). "[A]bsent a showing of prejudice on the part of the municipality, a party's failure to notify the municipality of a cause of action within a statutory time frame will not be a bar to such action." *Id.*; *see also City of Philadelphia v. Tax Review Bd. of City of Philadelphia*, 901 A.2d 1113, 1115 (Pa. Cmwlth. 2006) (interpreting local counterpart of the Refund Act pertaining to taxes in the same manner).

Here, Willow Ridge did not technically file a claim for refund until May 14, 2014, which was over three years after Willow Ridge paid the Township. R.R. at 306a. Although Willow Ridge filed a complaint on November 22, 2013, which was within the three-year period, a complaint does not constitute a "written and verified claim for the refund of the payment" for purposes of the Refund Act. By the plain language of the Refund Act, a claim must be filed as a prerequisite to filing suit. *See* 72 P.S. §5566c ("In the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund . . . , then the aggrieved person or corporation shall have the right to bring suit for and recover . . . ."). To conclude otherwise would invite unnecessary litigation in cases where a political subdivision may have every intention of issuing a refund upon proper presentation of a claim.

9

Notwithstanding, the Township was well aware that Willow Ridge disputed the assessment of tapping fees for its apartment complex within the three-year period. Willow Ridge expressed its intention to seek a reduction of tapping fees based on alternative capacity analysis for apartment dwellings when it sent its payment on March 30, 2011. R.R. at 228a. Willow Ridge stated the "payment is made subject to the design capacity analysis which we intend to submit and which we hope will result in a reduction in the total cost of our EDUs." R.R. at 228a. Willow Ridge also provided the Township Engineer with analysis supporting its claim that apartments use less water and less sewer, albeit one month prior to sending the payment. R.R. at 41a. Based on this data, Willow Ridge requested one EDU for every two apartment units. R.R. at 41a.

Although Willow Ridge's efforts did not technically constitute a timely "written and verified claim for the refund of payment" for purposes of the Refund Act, Appellees cannot profess surprise or prejudice. Appellees were well aware of Willow Ridge's position and its desire to seek a reduction in tapping fees for its apartment complex. *See Malvern*. Under the circumstances here, Willow Ridge's failure to file "a written and verified claim for the refund of the payment" within a three-year notification period does not operate as a bar to its Refund Act claim. Therefore, as the trial court properly recognized, it erred in dismissing Willow Ridge's claim under the Refund Act as time-barred.

### B. Alternative Grounds for Summary Judgment

Next, Willow Ridge contends the trial court erred in granting the Township's motion for summary judgment on the proffered alternative ground that it "would have found" that the Township was permitted to charge Willow Ridge for capacity it did not need or want and that Willow Ridge was not entitled to a

10

refund under the MAA or Refund Act. Willow Ridge objects to this alternate line of reasoning because it never had a hearing to prove its case and it contends that there are material facts in dispute. Willow Ridge is challenging the number of gallons per day of usage, which comprise a single EDU, which in turn determines how many tapping fees Willow Ridge was required to purchase. Under the MAA, rates must be "reasonable and uniform." 53 Pa. C.S. §5607(d)(9).[8] According to

---

[8] Section 5607(d)(9) of the MAA provides:

> (d) Powers.–Every authority may exercise all powers necessary or convenient for the carrying out of the purposes set forth in this section, including, but without limiting the generality of the foregoing, the following rights and powers:
>
> * * *
>
> (9) To fix, alter, charge and collect rates and other charges in the area served by its facilities at *reasonable and uniform rates* to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties and, in the case of an authority created for the purpose of making business improvements or providing administrative services, a charge for such services which is to be based on actual benefits and which may be measured on, among other things, gross sales or gross or net profits, the payment of the principal of and interest on its obligations and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations, or with a municipality and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, including extensions thereof, in the areas served. If the service area includes more than one municipality, the revenues from any project shall not be expended directly or indirectly on any other project unless such expenditures are made for the benefit of the entire service area. *Any person questioning the reasonableness or uniformity of a rate fixed by an authority or the adequacy, safety and reasonableness of the authority's services, including*

**(Footnote continued on next page…)**

11

Willow Ridge, that means they must be reasonably proportional to the value of service rendered. The burden is on the objecting customer to show that the municipality has abused its discretion by establishing a rate system that is not reasonably proportional to the services rendered. By granting summary judgment, the trial court deprived Willow Ridge of its opportunity to prove its case. The trial court lacked facts necessary to grant summary judgment in favor of Appellees on this alternate basis. Thus, Willow Ridge requests this Court to reverse the trial court, reinstate the second amended complaint, and remand for further proceedings.

Appellees[9] respond that Willow Ridge requested declaratory relief under the Refund Act on the theory that the Township is not entitled to tapping fees because the fees violate the MAA's "reasonable and uniform" provision. However, the trial court dismissed Willow Ridge's MAA claim on preliminary objections. R.R. at 119a. Willow Ridge did not identify this ruling as an error complained of on appeal or even mention the MAA in its Pa. R.A.P. 1925(b)

---

**(continued…)**

> *extensions thereof, may bring suit against the authority in the court of common pleas of the county where the project is located or, if the project is located in more than one county, in the court of common pleas of the county where the principal office of the project is located.* The court of common pleas shall have exclusive jurisdiction to determine questions involving rates or service. Except in municipal corporations having a population density of 300 persons or more per square mile, all owners of real property in eighth class counties may decline in writing the services of a solid waste authority.

53 Pa. C.S. §5607(d)(9) (emphasis added).

[9] The Borough did not file a brief of its own but joins in the Township's brief.

12

statement. Therefore, any argument based on the MAA is waived on appeal. Because Willow Ridge's refund claim is based on a waived violation of the MAA, entry of summary judgment was appropriate.

We first address Appellees' waiver claim. Pa. R.A.P. 1925(b) requires appellants to file a statement of errors complained of on appeal when so directed by the trial court. As our Supreme Court explained:

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) [S]tatement, when so ordered; *any issues not raised in a Rule 1925(b) [S]tatement will be deemed waived*; the courts lack the authority to countenance deviations from [Rule 1925(b)'s] terms; [Rule 1925(b)'s] provisions are not subject to ad hoc exceptions or selective enforcement; appellants and their counsel are responsible for complying with [Rule 1925(b)'s] requirements; Rule 1925[(b)] violations may be raised by the appellate court *sua sponte*, and the Rule applies notwithstanding an appellee's request not to enforce it[.] . . . We yet again repeat the principle first stated in [*Commonwealth v. Lord*, 719 A.2d 306, 308 (Pa. 1998),] that must be applied here: '[I]n order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a [Rule 1925(b) statement]. *Any issues not raised in a [Rule] 1925(b) [S]tatement will be deemed waived.*' [Id.] at 309.

*Commonwealth v. Hill*, 16 A.3d 484, 494 (Pa. 2011) (emphasis added).

Here, Willow Ridge's refund claim is premised on its claim that the tapping fee violates the MAA's "reasonable and uniform" provision. Willow Ridge raised the MAA violation in Count III of its second amended complaint. However, the trial court sustained the Township's preliminary objection to this count on the basis it was time-barred. R.R. at 119a. Willow Ridge did not contest

this ruling in its Pa. R.A.P. 1925(b) statement, raise any assertion of error based on its MAA claim, or even defend the timeliness of its MAA claim. *See* R.R. at 199a-200a. The sole focus of its Pa. R.A.P. 1925(b) statement is the Refund Act claim. *Id.* Consequently, any claim of an MAA violation is waived. *See Hill*. All we are left with is a claim under the Refund Act.

Insofar as Willow Ridge relies on *Skepton v. Borough of Wilson*, 755 A.2d 1267 (Pa. 2000), to support an independent claim under the Refund Act, this case is readily distinguishable. There, the borough imposed fees upon contractors to which the borough was not legally entitled. The ordinances and the resolution establishing the fees violated the Section 1202 of the former Borough Code,[10] "because the fees imposed were primarily for the purpose of raising revenue and were grossly disproportionate to any costs incurred by the [b]orough." *Id*. at 1269. The trial court found that the ordinances and resolution could not be enforced and the contractors were entitled to a full refund under the Refund Act. *Id*. at 1270. The Supreme Court agreed with the trial court opining, "if a taxpayer establishes that it paid taxes or fees to which the government is not entitled, the taxpayer is entitled to a refund." *Id.* at 1271.

Unlike in *Skepton*, Willow Ridge did not establish that the Township is not entitled to the tapping fees. Although Willow Ridge claimed that the tapping fees violated the MAA, the trial court dismissed this claim on preliminary objections. Without the MAA claim, there is no legal basis upon which to conclude the Township is not legally entitled to the tapping fees. The Refund Act merely provides the mechanism for recouping illegal fees, but not for establishing

---

[10] Act of February 1, 1966, P.L. (1965), 1656, *as amended*, 53 P.S. §46202, repealed by the Act of April 18, 2014, P.L. 432.

14

their illegality. *See Skepton*. Thus, there is nothing upon which to sustain a declaratory judgment action for a claim under the Refund Act.

## IV. Conclusion

For these reasons, we conclude that the trial court properly granted summary judgment in favor of the Township and against Willow Ridge.[11] Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

---

[11] We "may affirm on other grounds where grounds for affirmance exist." *Kutnyak v. Department of Corrections*, 748 A.2d 1275, 1279 n.9 (Pa. Cmwlth. 2000); *accord Sloane v. Workers' Compensation Appeal Board (Children's Hospital of Philadelphia)*, 124 A.3d 778, 786 n.8 (Pa. Cmwlth. 2015).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

FP Willow Ridge Associates, L.P., :
                          :
                Appellant   :
                          :
             v.          : No. 1846 C.D. 2016
                          :
Allen Township and Northampton :
Borough                               :

# O R D E R

AND NOW, this 6<u>th</u> day of <u>July</u>, 2017, the order of the Court of Common Pleas of Northampton County, dated October 14, 2016, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge