IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Northumberland          :
                                  :
          v.                      :
                                  :
Township of Coal,                 :      No. 982 C.D. 2021
                Appellant         :      Argued: September 15, 2022


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED: October 19, 2022


The Township of Coal (Township) appeals from the Northumberland County (County) Common Pleas Court's (trial court) August 23, 2021 order granting the County's Summary Judgment Motion (Motion) and directing the Township to refund the County $267,320.98. There are two issues before this Court: (1) whether the County complied with Section 1 of the Act commonly referred to as the Refund Act (Refund Act)[1] by submitting a verified claim to the Township before filing its assumpsit action; and (2) whether the trial court properly concluded that the County had met its burden of establishing that the Township's Permit Fee Ordinance was unreasonable. After review, this Court affirms.

On August 9, 2017, the County submitted building applications to the Township to convert an existing juvenile detention facility into a County prison after the County's prison was destroyed by a fire (Project). On August 11, 2017, the Township sent the County an invoice (Invoice) demanding $161,724.00 for "State

_____
[1] Act of May 21, 1943, P.L. 349, *as amended*, 72 P.S. § 5566b.

Inspections [and] Plan Review[.]" Reproduced Record (R.R.) at 29a. The Invoice also sought an additional $220,801.00 for a "Coal Township Permit" (Coal Township Permit) pursuant to Township Ordinance 408 (Ordinance).[2] *Id.*

On August 18, 2017, the County paid the Township $161,724.00. By September 6, 2017 correspondence, the Township acknowledged receipt of the County's payment, but demanded the outstanding $220,801.00 balance by close of business on September 13, 2017, or the Township would issue a stop work notice on September 14, 2017. *See* R.R. at 32a. By September 12, 2017 letter (September 12, 2017 Letter), County Chief Clerk Maryrose McCarthy (McCarthy) paid the Township $220,801.00 under protest and also demanded proof that the Township had incurred the costs purportedly represented by the previously submitted $161,724.00 fee. *See* R.R. at 35a-36a.

The September 12, 2017 Letter provided, in pertinent part:

> First, in regard to the payment previously made by the County [] to the Township [] in the amount of $161,724[.00], I am hereby requesting proof that the Township actually incurred, or will be charged, the costs as set forth in the August 11, 2017 Invoice to the County for "State Inspections [and] Plan Review."
>
> Secondly, regardless of whether the charges related to the $161,724[.00] are legitimate, I am also hereby requesting proof that the $220,801.00 fee, nebulously referred to in the Township's [I]nvoice as the Coal Township Permit fee, in any way relates to the costs to the Township in performing services related to the permitting of the prison.

---

[2] Effective March 9, 2006, Township Ordinance 408 amended Township Ordinance Nos. A-282 and A-393 to provide: "All building fees for new structures or the renovation or rehabilitation of an existing structure shall be 1% of the total construction estimate but not less than $10[.00] for the first $1,000[.00]. There shall be no maximum fee." Township of Coal, Northumberland Cnty., Pa. Ordinance § 408 (2006); R.R. at 266a. The $220,801.00 fee was 1% of the estimated $22,080,100.00 Project cost.

2

I would refer you to the following Pennsylvania Commonwealth Court cases on the subject: *Raum v. Board of Sup*[*ervisors*] *of Tredyffrin* [*Township*], 370 A.2d 777 ([Pa. Cmwlth.] 1976); *Bucks Cove Rod & Gun Club, Inc. v. Texas* [*Township*] *Zoning* [*Hearing Board* (Pa. Cmwlth. No. 2666 C.D. 2010, filed Sept. 14, 2011)]; *Martin Media v. Hempfield* [*Township*] *Zoning Hearing* [*Board*], 671 A.2d 1211 ([Pa. Cmwlth.] 1996); *Skepton v. Borough of Wilson*, [755 A.2d 1267] ([Pa.] 2000) . . . . These cases all clearly state that a municipality may not use its power to charge fees for issuing licenses or permits for the purpose of raising revenue and, further, that the fees charged must be directly related to the costs incurred by the municipality in issuing the permit. Any amounts collected in excess of the Township's costs will be considered an unauthorized tax and the County will be permitted to recoup these amounts, plus interest. I would point out that your [Township] Board [of Commissioners'] member's comments in the local newspaper would seem to belie any argument that the fees the Township has charged are in any way related to the Township's actual costs.

If I have not received the documentation requested herein, on or before the close of business on September 20, 2017, please be advised that the County will commence action against the Township for reimbursement of all fees over and above the Township's actual costs. In the event that the Township wishes to revise its permit fee, based upon the aforementioned, please feel free to send your revised fee to my attention.

R.R. at 35a-36a.

On January 15, 2018, the County filed an action in the trial court seeking declaratory judgment that the Township's building fees were unreasonable and/or unenforceable and that the building permit fees charged were unconstitutional and/or legally invalid (Complaint). Further, the County sought relief in assumpsit, requesting a refund of building fees, permit fees, inspection fees or other fees in excess of the Township's actual expense of administering the building permit process, plus interest.

3

On February 16, 2018, the Township filed preliminary objections to the County's Complaint. Therein, the Township alleged, *inter alia*, that the Complaint should be dismissed because the County did not submit to the Township "a written and verified claim" before filing its action in assumpsit, as required by Section 1(a) of the Refund Act. 72 P.S. § 5566b(a). The County filed its response to the preliminary objections. On April 25, 2018, the trial court overruled the Township's preliminary objections, concluding, in pertinent part, that given the County's September 12, 2017 Letter, the Township had failed to demonstrate that the County did not satisfy Section 1(a) of the Refund Act's "written and verified claim" requirement. 72 P.S. § 5566b(a); *see* R.R. at 73a-74a.

On May 30, 2018, the Township filed its Answer, New Matter and a Contingent Counterclaim. On June 27, 2018, the County filed its Answer to the Township's New Matter and Contingent Counterclaim. On August 30, 2018, the Township filed a Summary Judgment Motion, alleging that the County had failed to file a "written and verified claim for a refund of alleged overpayment for permits." R.R. at 107a. On September 25, 2018, the County filed its response thereto. On December 17, 2018, the trial court denied the Township's Summary Judgment Motion. *See* R.R. at 238a-239a.

On February 18, 2021, the County filed its Motion, alleging therein that no genuine issues of material fact remained with respect to the County's right to a refund. On March 19, 2021, the Township filed its response. On August 23, 2021, the trial court granted the County's Motion and directed the Township to refund the County $267,320.98 plus statutory interest and costs. *See* R.R. at 383a. In its contemporaneous opinion, the trial court reasoned:

> Building permit fees fall within the category of license
> fees and must be assessed commensurate with the expense
> of administering the permit. [*See*] 72 P.S. [§] 5566b;

4

> *Skepton . . .* , and *Talley v. Commonwealth . . .* , . . . 553 A.2d 518 ([Pa. Cmwlth.] 1989).
>
> Presented at oral argument and attached to the [County's] brief is evidence that Building Inspections Underwriters (B.I.U.), the entity the Township engaged to perform all inspections and reviews, actually discounted its charge to the Township, resulting in a total payment by the Township in the amount of $113,204.02. This appears to be unrefuted evidence.
>
> In a deposition with Robert M. Slaby, Jr. [(Slaby)], [] Township Manager, it is acknowledged that the Township performed no independent inspections, so the [trial] court is confronted with an assessed fee of $269,320.98 that cannot be justified by corresponding [T]ownship expenditures or expenses. The Township's explanation is reduced to an argument that this amount was assessed to cover general administrative costs. In support of this assertion, they have provided no documentation; the [trial] court will concede, however, that they have the usual expenses attendant to running the office and will adjust the refund by $2[,]000.00, which the [trial] court considers generous.

Trial Ct. Aug. 23, 2021 Op. at 2; R.R at 384a. On September 1, 2021, the Township appealed to this Court.[3]

The Township first contends that the County failed to satisfy the Refund Act's mandatory requirement that it submit a "written and verified claim" before bringing suit, and argues that the trial court's conclusion that the September 12, 2017 Letter satisfied those requirements is erroneous. 72 P.S. § 5566b(a). The Township cites *Stranahan v. County of Mercer*, 697 A.2d 1049 (Pa. Cmwlth. 1997), to support its position that this Court must "narrowly construe [the Refund Act's] statutory procedures and require the [County] to file for a refund before bringing an action in

---

[3] "An order of a trial court granting summary judgment may be disturbed by an appellate court only if the [trial] court committed an error of law . . . ; thus, our standard of review is *de novo*, and our scope of review is plenary." *Firearm Owners Against Crime v. City of Pittsburgh*, 276 A.3d 878, 884 n.8 (Pa. Cmwlth. 2022) (quoting *Desher v. Se. Pa. Transp. Auth.*, 212 A.3d 1179, 1185 n.6 (Pa. Cmwlth. 2019)).

assumpsit." Township Br. at 9 (quoting *Stranahan*, 697 A.2d at 1053) (emphasis omitted). The Township asserts that because the September 12, 2017 Letter did not explicitly request a refund, and was not verified, the trial court should have dismissed the action.

> Section 1 of the Refund Act states in relevant part:
>
> (a) Whenever any person or corporation of this Commonwealth has paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, license fees, penalties, fines or any other moneys to which the political subdivision is not legally entitled; then, in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. Refunds of said moneys shall not be made, unless a written claim therefor is filed, with the political subdivision involved, within three years of payment thereof.
>
> . . . .
>
> (c)(1) Any taxpayer who has paid any tax money to which the political subdivision is not legally entitled shall receive interest on such sum of money. . . .

72 P.S. § 5566b. Section 2 of the Refund Act provides:

> In the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund of taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, or refusal or failure to pay interest as required by [S]ection 1 [of the Refund Act], then the aggrieved person or corporation shall have the right to bring suit for and recover any such taxes, interest, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled, subject to the limitation herein provided, by instituting an action in assumpsit in the court

of common pleas of the county wherein such political subdivision is located.

72 P.S. § 5566c.

This Court addressed the Refund Act in *FP Willow Ridge Associates, L.P. v. Allen Township*, 166 A.3d 487 (Pa. Cmwlth. 2017). Therein, an apartment complex owner (Willow Ridge) sought a sewer tapping fee refund from the township. Although Willow Ridge filed its complaint within three years of paying the fees, it did not file a claim for refund with the township within the three-year period following payment, as required by the Refund Act. The *FP Willow Ridge* Court explained:

> This Court has held that **the Refund Act's three-year provision is a statute of notification**, **not a statute of limitations**. *Borough of Malvern v. K.R.I. Corp.*, . . . 570 A.2d 633, 636 ([Pa. Cmwlth.] 1990). "[A]**bsent a showing of prejudice on the part of the municipality**, **a party's failure to notify the municipality of a cause of action within a statutory time frame will not be a bar to such action**." *Id.*; *see also City of Phila*[.] *v. Tax Rev*[.] *Bd. of City of Phila*[.], 901 A.2d 1113, 1115 (Pa. Cmwlth. 2006) (interpreting local counterpart of the Refund Act pertaining to taxes in the same manner).
>
> Here, Willow Ridge did not technically file a claim for refund until May 14, 2014, which was over three years after Willow Ridge paid the [t]ownship [on March 31, 2011]. Although Willow Ridge filed a complaint on November 22, 2013, which was within the three-year period, a complaint does not constitute a "written and verified claim for the refund of the payment" for purposes of the Refund Act. By the plain language of the Refund Act, a claim must be filed as a prerequisite to filing suit.[4] *See* 72 P.S. § 5566c ("In the event of refusal or failure on the part of authorities of the political subdivision involved to make any such refund . . . , then the aggrieved person or corporation shall have the right to bring suit for and

---

[4] Notably, Willow Ridge's written claim, submitted approximately six months after Willow Ridge filed its complaint, was itself unverified, but enclosed and referenced a copy of the verified complaint.

7

recover . . . ."). To conclude otherwise would invite unnecessary litigation in cases where a political subdivision may have every intention of issuing a refund upon proper presentation of a claim.

**Notwithstanding**, **the [t]ownship was well aware that Willow Ridge disputed the assessment of tapping fees for its apartment complex within the three-year period**. **Willow Ridge expressed its intention to seek a reduction of tapping fees** based on alternative capacity analysis for apartment dwellings **when it sent its payment on March 30**, **2011**. . . .

Although Willow Ridge's efforts did not technically constitute a timely "written and verified claim for the refund of payment" for purposes of the Refund Act, [a]ppellees cannot profess surprise or prejudice. Appellees were well aware of Willow Ridge's position and its desire to seek a reduction in tapping fees for its apartment complex. Under the circumstances here, Willow Ridge's failure to file "a written and verified claim for the refund of the payment" within a three-year notification period does not operate as a bar to its Refund Act claim.

*FP Willow Ridge*, 166 A.3d at 493-94 (emphasis added; citations omitted).

Based in part on *FP Willow Ridge*, the trial court rejected the Township's arguments that the County had failed to adhere to the Refund Act's procedures, reasoning:

On September 12, 2017, the County paid the [] Township Permit [f]ee but stated that [it] did so "under protest". The County declared that the building fees, as assessed by the Township, were not permissible by law and demanded repayment of fees in excess of the actual amount of the costs incurred by the Township in issuance of the same. In its September 12, 2017 [L]etter, the County advised the Township that if it did not receive the requested documentation on fees and taxation, it would "commence action against the Township for reimbursement of all fees over and above the Township's actual costs." Furthermore, a [d]efendant cannot feign "surprise or prejudice" when the [d]efendant was well aware of the

8

[p]laintiff's position and desire to seek a reduction in fees.
*FP Willow Ridge . . .* , 166 A.3d [at] 494 . . . .

Trial Ct. Apr. 25, 2018 Op. at 4-5; R.R. at 73a-74a.

The Township argues that the trial court misconstrued *FP Willow Ridge* by interpreting it to invalidate the statutorily-mandated written and verified claim requirement based on the Township's awareness of the claim, rather than simply interpreting *FP Willow Ridge* to permit the submission of a written and verified claim beyond three years, while still requiring strict compliance with the requirements that a written and verified claim be submitted.[5] In particular, the Township claims the trial court ignored the *FP Willow Ridge* Court's conclusion that "[b]y the plain language of the Refund Act, a claim must be filed as a prerequisite to filing suit," *id.* at 493, and its declaration that "a complaint does not constitute a 'written and verified claim for the refund of the payment' for purposes of the Refund Act."[6] *Id.* This Court disagrees.

The statutorily-mandated "written and verified claim" requirement's purpose, 72 P.S. § 5566b(a), is "to notify a municipality that a claim may be pending against it[.]" *Malvern*, 570 A.2d at 636. The Pennsylvania Superior Court has held that "the determination that an action should be barred for failure to comply with the notice statute must be coupled with a consideration of what if any prejudice resulted to the defendant." *Landis v. Phila.*, 369 A.2d 746, 749 (Pa. Super. 1976); *see also*

---

[5] This Court questions the practical consequences of accepting the Township's argument. Even if this Court concluded that the September 12, 2017 Letter demanding justification for the fees imposed, and threatening legal action for reimbursement, did not constitute a claim, and/or the lack of verification invalidated the claim, this matter would not be put to rest. Here, the Township was aware of the County's claim, **within one month of the County's initial payment**. Thus, although it is now well beyond three years since the County's initial payment, the Township would be hard pressed to establish prejudice, and, accordingly, the County would not be prohibited from filing its written and verified claim and again bringing an action in assumpsit.

[6] The Township disregards the fact that in *FP Willow Ridge*, Willow Ridge's request for refund was not filed until after Willow Ridge instituted its legal action. Clearly, the *FP Willow Ridge* Court did not require strict compliance with the Refund Act's notification provision.

9

*Dubin v. Se. Pa. Transp. Auth.*, 281 A.2d 711, 712 (Pa. Super. 1971) (with respect to notice filed one week beyond a statutory six-month notice requirement, the Superior Court, quoting the lower court, explained that the statute "is not a statute of limitations. It must be reasonably applied to effectuate its purpose and not to needlessly strike down just claims. . . . There is no question that the plaintiff has substantially complied with the provisions . . . .").

Here, within one month of the County's initial August 18, 2017 payment, the Township "was well aware" that the County disputed both fees. Trial Ct. Apr. 25, 2018 Op. at 5; R.R. at 74a. As noted by the trial court, the County's September 12, 2017 Letter was unmistakably clear that the County believed the fees were unlawful, demanded justification therefor, and threatened legal action to recover fees in excess of the Township's actual costs. In the September 17, 2017 Letter, the County expressly claimed it was entitled to "recoup" the excess fees charged and threatened legal action seeking "reimbursement."[7] R.R. at 36a. Thus, the September 12, 2017 Letter unambiguously notified the Township "that a claim may be pending against it[.]"[8] *Malvern*, 570 A.2d at 636. Approximately four months after the deadline set for the Township's response, the County filed the instant assumpsit action.

It is undisputed that the September 12, 2017 Letter was not verified.[9] However, in *Donald B. Remmey, Inc. v. Centennial School District*, 25 Pa. D. & C.

---

[7] The Refund Act does not set forth requirements for a "written . . . claim" and does not explicitly mandate that a written claim include the word *refund*. 72 P.S. § 5566b(a).

[8] The Township contends that the Refund Act's language contemplates that payments may be made under protest, however, even in such cases, it requires an additional written and verified claim be submitted. Here, the County did far more than submit a payment under protest. It expressed that it was entitled to recoup the overpayments, sought documentation from the Township to justify its charges, and threatened litigation to obtain reimbursement.

[9] The Refund Act does not define "verified claim[.]" 72 P.S. § 5566b(a). However, "[i]t is generally recognized . . . that for legal purposes verification means confirmation of the truth of a statement by oath or affirmation." *Commonwealth v. Jones*, 369 A.2d 733, 734 (Pa. Super.

3d 397 (1982), *aff'd*, *Centennial School District v. Donald B. Remmey, Inc.*, 459 A.2d 915 (Pa. Cmwlth. 1983) (*Remmey II*), the trial court determined that such lack of verification did not preclude recovery. The plaintiff therein brought an action against Centennial School District (District) for a refund of a business privilege tax. The District argued, *inter alia*, that the plaintiff's claim, in the form of a letter seeking a refund, was invalid because it was unverified. The trial court rejected the District's argument, explaining:

> We do not find, however, that a merely technical error of this sort precludes plaintiff from recovering in a suit in assumpsit. The mere fact that plaintiff has not attested to the accuracy of his claim by oath or affixed an affidavit has not impaired the purpose of the act or prejudiced [the District] in any way. The taxing authority has been appraised of plaintiff's claim. It is difficult to see what difference it would make if plaintiff had a notary seal or an affidavit affixed to its letter.

*Remmey*, 25 Pa. D. & C. 3d at 403 (citation omitted). This Court affirmed based on the trial court's opinion, "agree[ing] with the trial court's reasoning and disposition of the legal issues . . . ." *Remmey II*, 459 A.2d at 915.

As in *Remmey*, the County's failure to affirm the truth of its statement contained in the September 12, 2017 Letter did not prejudice the Township or impair the Refund Act's purpose. The Township "was well aware" of the County's claims. Trial Ct. Apr. 25, 2018 Op. at 5; R.R. at 74a. Accordingly, this Court concludes that the trial court did not err when it held that the County complied with Section 1 of the Refund Act.

The Township next contends that the County failed to sustain its burden to prove both that the fees were unreasonable and that the Township did not reasonably anticipate the expense of enforcing the Ordinance.

1977). "The purpose of verification is to defend a party against spurious allegations." *Twp. of Chester v. Stapleton*, 456 A.2d 673, 675 n.1 (Pa. Cmwlth. 1983).

Initially,

"[o]rdinances are presumed to be valid and those who challenge their validity carry a heavy burden to establish their invalidity." *Fisher v. Viola*, 789 A.2d 782, 785 (Pa. Cmwlth. 2001); *accord Chrin Brothers, Inc. v. Williams T*[*wp.*] *Zoning Hearing B*[*d.*], 815 A.2d 1179, 1184 (Pa. Cmwlth. 2003). A rebuttable presumption is not absolute or unassailable. *Commonwealth v. McNeil*, . . . 439 A.2d 664, 667 ([Pa.] 1981); *Kiskadden v. Dep*[*'t*] *of Env*[*'t*] *Prot*[.], 149 A.3d 380, 402 (Pa. Cmwlth. 2016) . . . . It is merely an assumption until it is disproved.

*Ziegler v. City of Reading*, 216 A.3d 1192, 1201 (Pa. Cmwlth. 2019).

Relative to whether the fee was reasonable, this Court explained:

The Pennsylvania Supreme Court, in *Mastrangelo v. Buckley*, . . . 250 A.2d 447 ([Pa.] 1969), defined a license fee as follows:

> A license fee is a sum assessed for the granting of a privilege. **In most instances, where a license is granted the** [**c**]**ity invariably incurs expense**[**s**] **such as the cost of registration and inspection**; **it is only proper that one who seeks and receives a license should bear this expense. To defray the cost of a license a fee is charged to the licensee**; however, this fee must be commensurate with the expense incurred by the [c]ity in connection with the issuance and supervision of the license or privilege.

*Mastrangelo*, 250 A.2d at 464 (footnote omitted). "A license fee is distinguishable from a tax[,] which is a revenue producing measure characterized by the production of a high proportion of income relative to the costs of collection and supervision." *Thompson v. City of Altoona Code Appeals Bd.*, 934 A.2d 130, 133 (Pa. Cmwlth. 2007). A municipality cannot impose a tax upon a business under the guise of exercising its police power, and, therefore, **a license fee will be struck down if its amount is "grossly disproportionate to the sum**

12

**required to pay the cost of the due regulation of the business.**" *Flynn v. Horst*, . . . 51 A.2d 54, 60 ([Pa.] 1947). "**The party challenging a license fee has the burden of proving that the fee is unreasonable.**"[10] *Thompson*, 934 A.2d at 133. "All doubt must be resolved in favor of the reasonableness of the fee, since **the municipality must be given reasonable latitude in anticipating the expense of enforcing the ordinance.**" *Id.*

*Costa v. City of Allentown*, 153 A.3d 1159, 1165 (Pa. Cmwlth. 2017) (emphasis added).

The Township's Invoice stated in relevant part:

The permit fees for the Northumberland County Prison Project are as follow[s]:

State Inspections [and] Plan Review - $ 161,724.00[.00]

| **BREAKDOWN:** | Building | $ 103,345.00 |
| | Bldg. Plan Review | 9,887.00 |
| | State Fee | 4.00 |
| | Electrical | 9,340.00 |
| | Elec[.] Plan Review | 2,471.75 |
| | Mechanical | 15,120.00 |
| | Mech. Plan Review | 2,471.75 |
| | Plumbing | 11,000.00 |
| | Plumb[.] Plan Review | 2,471.75 |
| | Fire Protection | 3,141.00 |
| | F.P. Plan Review | 2,471.75 |
| | | $ 161,724.00 |

| Coal Township Permit - | $ 220,801.00 |

R.R. at 29a.

According to the Invoice, the $161,724.00 fee represented the state inspections and plan reviews attendant to the granting of necessary permits (State

---

[10] Importantly, "[t]he burden does not shift to a municipality to prove that a challenged fee is reasonable; it always remains the burden of the challenger to show that the fees are unreasonable." *Ziegler v. City of Reading*, 216 A.3d 1192, 1201 (Pa. Cmwlth. 2019) (quoting *M & D Props., Inc. v. Borough of Port Vue*, 893 A.2d 858, 863 (Pa. Cmwlth. 2006)).

13

Inspections and Plan Reviews). However, the trial court found that unrefuted evidence showed that B.I.U., which performed all inspections and reviews on the Township's behalf, charged the Township only $113,204.02 for the State Inspections and Plan Reviews.[11] Nonetheless, the Township assessed the full $161,724.00 fee to the County, charging the County an additional $48,519.98 over and above its costs for the inspections and reviews.

In addition, the Township assessed the $220,801.00 Coal Township Permit fee pursuant to its Ordinance representing 1% of the estimated Project cost. *See* R.R. at 266a. However, in deposition testimony, Slaby confirmed that B.I.U. performs **all** inspections relating to the State Inspections and Plan Reviews, and **acknowledged that with respect to the Coal Township Permit**, **there is no formal inspection process**, **and no additional inspections are performed beyond those performed for the State Inspections and Plan Reviews**. *See* R.R. at 258a-259a.

As our Supreme Court described in *Mastrangelo*, license fees defray the cost of expenses such as "the cost of registration and inspection[,]" *Mastrangelo*, 250 A.2d at 464. Here, B.I.U. charged the Township $113,204.02, and the Township in turn, charged the County $161,724.00 for the State Inspections and Plan Reviews.[12] *See* R.R. at 29a. Even if a portion of the $48,519.98 difference between

---

[11] The charge represented a 30% discount that B.I.U. offered the Township which the Township accepted. *See* R.R. at 270a-271a.

[12] In an affidavit attached to the Township's response to the County's Motion, Slaby clarified his deposition testimony, that $161,724.00 of the charges represented "separate costs related to permitting and the administration of the Uniform Construction Code ([]UCC[])[, Act of Nov. 10, 1999, P.L. 491, *as amended*, 35 P.S. § 7210.301-7210.305]." R.R. at 294a. He expounded:

> 6. First, there are permits which are administered by the Township which are not specifically controlled by the UCC.
>
> 7. Specifically, 70% of UCC (State) permit fee costs which have specific trade inspections are paid to the Township's retained inspectors. The balance of the 30% of the UCC permit fees [resulting from B.I.U.'s discount] are allocated to and used to defray

the Township's expense and the amount it invoiced the County could be attributed to administrative or supervisory costs as the Township contends, and part of the $161,724.00 fee was thereby justified as representing the costs of inspections, reviews and administrative fees, there is no record evidence justifying the additional cost between B.I.U.'s charge and the amount the Township invoiced, or the additional 1% Ordinance fee, apart from the Township's general claims that the charges cover administrative expenses.

Indeed, the trial court emphasized:

the Township's administrative costs, which include the maintenance of our offices, telephone, fax and internet capabilities and allocable Township staff time to administer the UCC.

8. In addition, the Township's Code Officer patrols the Township to identify work that requires both Township and UCC permits. The Township administrative staff and Code Officer answers [sic] questions about the permitting requirements, processes, and plan requirement. Township administrative staff members record and track all plans and permits, with in[-]person visits, phone calls and emails back and forth with permittees on a routine basis. Properly enforcing the UCC takes a considerable amount of Township administrative staff time.

9. The Township has reasonably allocated all administrative costs.

10. The County's reference to the "30%" [discount by B.I.U.] which the County claims are "overcharges" are, in fact, allocated to offset the Township's administrative costs.

11. The County has failed to understand, and therefore has misrepresented the Township's costs which are defrayed by the permit fees. . . .

. . . .

14. The Township's methodology of allocating administrative costs was established by the Township approximately 15 years ago and reflects the continued reasonable effort by the Township to establish a fee schedule reasonably reflective of the proper allocation of costs. The allocation of costs is based on historical data and reasonably anticipates the Township's actual costs in the year to come.

R.R. at 294a-295a.

15

> [Slaby acknowledged that] the Township performed no independent inspections, so the [trial] court is confronted with an assessed fee of $269,320.98 that cannot be justified by corresponding [T]ownship expenditures or expenses. The Township's explanation is reduced to an argument that this amount was assessed to cover general administrative costs. In support of this assertion, [it has] provided no documentation; the [trial] court will concede, however, that [it has] the usual expenses attendant to running the office . . . .

Trial Ct. Aug. 23, 2021 Op. at 2; R.R. at 384a.

> The Township contends:

> The necessary predicate to the County's entitlement to *any* relief for Counts I and II of its complaint was [to] have undisputed facts which lead to the invariable and inevitable conclusion that the Township's Ordinance was illegally conceived or disparately enforced. The County offered and had no such evidence.

> [T]he uncontradicted facts set forth in . . . Slaby's affidavit reflect that the Township's permit fee structure considers the cost and expenses incurred by the Township in the inspection and administration of construction within the Township.

Township Br. at 19-20 (footnote and citation omitted). The Township also claims that "[t]he County offered no evidence supporting its claim that the Ordinance was, *per se*, 'unreasonable' or that the Township did not reasonably anticipate costs and the expense of enforcing the Ordinance when it was adopted." Township Br. at 18-19. In fact, the Township asserts that "**the County took *no steps* to establish the Township's *total* costs related to the administration of the prison construction**[,]" and thus did not meet its burden. Township Br. at 20 (bold emphasis added). It further contends that "[t]he County did not acknowledge, and **did not seek to identify**, [the] **Township's costs associated with the prison project**." *Id*. (emphasis added).

16

Contrary to the Township's assertions, the County demanded in its September 12, 2017 Letter, "proof that the Township actually incurred, or will be charged, the costs . . . for 'State Inspections [and] Plan Review[,]'" and "proof that the $220,801.00 fee, nebulously referred to in the Township's invoice as the Coal Township Permit fee, in any way relates to the costs to the Township in performing services related to the permitting of the prison." R.R. at 35a. Further, at Slaby's deposition, the County did seek such information, asking: "**You do not charge a building fee based upon what the project is going to cost the** [T]**ownship**; **correct**?" R.R. at 265a (emphasis added). Slaby answered, "**Correct**." *Id*. (emphasis added). The County then asked Slaby: "**Do you have any calculation that you have done regarding what the costs that the** [T]**ownship incurred as a result of the** [**Project**] **are**?" R.R. at 265a (emphasis added). Slaby responded: "**Not at this time**. **No**." *Id*. (emphasis added).

The County also contends that it "requested in discovery that [the] Township produce any and all costs [the] Township incurred [ ] in excess of B[.]I[.]U[.]'s charges . . . [and the] Township failed to produce any evidence of any such costs." County Br. at 20. Notably, the Township does not reference any such evidence in its briefs beyond the general assertions in Slaby's affidavit. Although it is a challenger's burden to show a license fee exceeds the costs of administration, where a challenger has specifically requested proof of costs and a defendant fails to disclose proper proof of its costs and where the evidence produced demonstrates that fees were improperly inflated, a court may find that the challenger has met its burden to invalidate the fee. *See Martin Media*.

The County filed its Complaint including counts seeking declaratory judgment that the Township's fees were unreasonable, unenforceable and unconstitutional, and further, a count seeking relief in assumpsit, requesting a refund of its alleged overpayments. The County moved for summary judgment and the trial

17

court granted the County's Motion, ordering the Township to refund $267,320.98 to the County. Given the 30% differential between the costs of inspections charged to the Township and the costs the Township charged to the County, the evidence demonstrating the lack of a formal inspection process, the lack of any additional inspections conducted attendant to the Coal Township Permit, and the Township's failure, upon demand, to document its related actual costs, the trial court did not err when it concluded that the County had met its burden. *See Martin Media*. For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge


Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Northumberland       :
      :
v.       :
      :
Township of Coal,       :    No. 982 C.D. 2021
      Appellant       :

## O R D E R

AND NOW, this 19th day of October, 2022, the Northumberland County Common Pleas Court's August 23, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge