IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donna Davis Javitz,                :
             Appellant       :
                         :
        v.               :     No. 115 C.D. 2020
                         :
Luzerne County, Robert Lawton,  :     Argued: April 9, 2025
and David Parsnik           :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

OPINION
BY JUDGE McCULLOUGH             FILED: August 21, 2025

This appeal returns to us following a remand from the Supreme Court of Pennsylvania, which granted the petition for allowance of appeal of Donna Davis Javitz (Appellant), the former Director of Human Resources of Luzerne County (County). In *Javitz v. Luzerne County* (Pa. Cmwlth., No. 115 C.D. 2020, filed July 19, 2021)[1] (*Javitz I*), *rev'd*, 293 A.3d 570 (Pa. 2023) (*Javitz II*), this Court affirmed the December 18, 2019 order of the Court of Common Pleas of Luzerne County (trial court), entering summary judgment in favor of the County, Robert Lawton, and David Parsnik (Appellees), and against Appellant as to all counts of her "whistleblower" complaint. In particular, the Supreme Court held that this Court misapplied the standard that a plaintiff must meet in order to establish a prima facie claim under the Pennsylvania

---

[1] Judge McCullough filed a dissenting opinion.

Whistleblower Law (Whistleblower Law), 43 P.S. § 1423,[2] and remanded to us to consider "the balance of the issues raised by [Appellant] on appeal," including "her challenge to the trial court's ruling that she failed to establish wrongdoing by a public body." *Javitz II*, 293 A.3d at 586, n.21.

For the reasons that follow, we affirm, in part, reverse, in part, and remand for further proceedings.

## I.    Facts and Procedural History

In November and December of 2014, Appellant, as the Director of Human Resources for the County, conducted two investigatory meetings with the American Federation of State, County, and Municipal Employees (AFSCME or union), pertaining to the terminations/grievances of two AFSCME members. Paula Schnelly, an administrative assistant in the appellate division of the County's District Attorney's (DA) Office and union president, attended the investigatory meetings as a representative for the union members. After those meetings, AFSCME filed an unfair labor practices (ULP) charge taking issue with Appellant's conduct during the meetings. According to Appellant, the ULP charge prepared by AFSCME included two exhibits, which were "verbatim notes" in transcript form of the conversations that allegedly took place during those meetings. Appellant suspected that Schnelly

---

[2] Act of December 12, 1986, P.L. 1559, *as amended*. Section 3(a) of the Whistleblower Law provides, in pertinent part:

> (a) Persons not to be discharged. -- No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee . . . makes a good faith report . . . to the employer or appropriate authority [of] an instance of wrongdoing or waste by a public body[.]

43 P.S. § 1423(a).

recorded the meetings without the consent of those present, a crime under Pennsylvania's Wiretapping and Electronic Surveillance Control Act (Wiretap Act).[3] Appellant reported her concern to her supervisor, the County's Director of Administrative Services, Parsnik, who agreed that the meeting may have been recorded. The two then met with the DA, who indicated that she would refer the matter to the Office of the Attorney General due to a conflict of interest. After making this report to the DA, Appellant alleges that County employees retaliated against her. She claims that her supervisor assigned work directly to her subordinates and cut her out of those and other assignments for which she would have otherwise been responsible. She also cites the relocation of her office in May of 2015 as an example of how she was treated differently after making the report. On October 26, 2015, Appellant was fired. She was given no reason for her termination. She requested a *Loudermill*[4] hearing but was denied.

A. Original Complaint and District Court Proceedings

Appellant filed an action against Appellees in the United States (U.S.) District Court for the Middle District of Pennsylvania on December 21, 2015, alleging a 42 U.S.C. § 1983 civil rights claim for violation of her procedural due process rights under the Fourteenth Amendment (Count I), a Section 1983 civil rights claim under the First Amendment for retaliation (Count II), along with a count titled "Violation of Legislative Enactments," which included claims for violations of the whistleblower provisions found in Section 103.05(P) of the Accountability, Conduct and Ethics Code

---

[3] 18 Pa.C.S. §§ 5701-5782.

[4] *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

3

(Ethics Code),[5] the County's Personnel Code[6] and Home Rule Charter (plead together in Count III), Section 3(a) of the Whistleblower Law, 43 P.S. § 1423(a), and a common law tort claim for wrongful termination in violation of public policy (plead together in Count IV).[7] The state law claims (Counts III and IV) were transferred to the trial court on August 17, 2018.[8]

---

[5] Luzerne County, Pennsylvania, Accountability, Conduct, and Ethics Code (2012). The Ethics Code is found on pages 5a-27a of the Reproduced Record (R.R.). Section P prohibits penalizing a covered person "for whistle-blowing." (R.R. at 15a.)

[6] Section 1005.02.B of the Personnel Code provides that dismissals of County "career service employees" shall be "for just cause only" and provides for a fair and impartial hearing. (R.R. at 68a.) Appellant alleged that this section of the Personnel Code guaranteed that her employment would not be terminated without just cause and the County violated this guarantee.

[7] A common law cause of action for wrongful termination is not recognized in Pennsylvania, except in very limited circumstances, where the employee's discharge of an at-will employee violated a clear public policy. *Pipkin v. Pennsylvania State Police*, 693 A.2d 190, 191 (Pa. 1997).

[8] The federal case meanwhile wound its way through nearly a decade of litigation. Specifically, Appellees filed a motion to dismiss the complaint. On March 31, 2017, the federal District Court denied the motion with respect to all counts, except for Appellant's wrongful discharge claim which it dismissed because the Whistleblower Law afforded Appellant a remedy. *Javitz v. Luzerne County*, No. 3:15-CV-2443, 2017 WL 1217178, at *12 (M.D. Pa. March 31, 2017).

Appellees subsequently filed a motion for summary judgment on the remaining claims. On March 29, 2018, the U.S. District Court dismissed Appellant's federal due process and First Amendment claims on summary judgment. *Javitz v. Luzerne County*, No. 3:15-CV-2443, 2018 WL 1545589, at *6-8 (M.D. Pa. March 29, 2018), *aff'd in part, rev'd in part and remanded sub nom*. *Javitz v. County of Luzerne*, 940 F.3d 858 (3d Cir. 2019). In dismissing the due process claim, the federal District Court held "based on the unambiguous terms of the offer of employment that [Appellant] signed, [Appellant] is an at-will…employee," and as such does not have a property interest in her government position that would give rise to Fourteenth Amendment protection. In reaching that conclusion, the U.S. District Court carefully examined and rejected Appellant's claim that she was a "career services" employee who, under the Home Rule Charter and Personnel Code, could only be terminated for "just cause." Regarding Appellant's First Amendment retaliation claim, the U.S. District Court held that Appellant's speech (reporting a crime) was not protected speech because she spoke as a public employee and not as a private citizen.

**(Footnote continued on next page…)**

B. Trial Court's Dismissal of the Complaint on Summary Judgment

Following the completion of discovery, Appellees filed a motion for summary judgment, arguing that the record facts demonstrate that Appellant was terminated for poor work performance, and that, given these facts, Appellant cannot satisfy the requirement of the Whistleblower Law (Count IV) of a report of wrongdoing or show that her discharge was in retaliation for a report of wrongdoing. Appellees also argued that Schnelly was acting as a representative of AFSCME, not a "public body," at the time she allegedly recorded Appellant and, therefore, her Whistleblower Law claim fails.

Regarding Appellant's Violation of Legislative Enactments claim (Count III), which asserted that she was a "career services employee" who could only be discharged for just cause under the Personnel Code, Appellees argued that the undisputed facts establish that Appellant was an "at-will" and "exempt" employee, as evidenced by her executed offer of employment letter, and therefore, she could be terminated for any reason, including "without just cause" or "at the pleasure of the person authorized to [hire her]." (R.R. at 122a.) They also argued that the U.S. District Court had already rejected Appellant's claim that the Personnel Code guaranteed that

On October 10, 2019, the Third Circuit Court of Appeals affirmed the federal District Court's due process ruling but reversed and remanded its First Amendment ruling because Appellant's speech was that of a citizen speaking to a matter of public concern. *Javitz*, 940 F.3d at 867.

On remand, a four-day trial was held on Appellant's First Amendment retaliation claim, after which the jury returned a verdict for Appellees, finding that Appellant had not proven by a preponderance of the evidence that "[Appellant's] report of being illegally recorded and her follow-up on the status of the investigation into that alleged crime was a motivating factor in the decision to terminate [Appellant's] employment." *Javitz v. Luzerne County*, 616 F. Supp. 3d 394, 423-24 (M.D. Pa. 2022). Judgment was entered in favor of Appellees on July 12, 2021. The federal District Court denied Appellant's application for relief from judgment. *Id.* Appellant appealed to the Third Circuit which affirmed. *Javitz v. Luzerne County*, No. 22-2519, 2023 WL 5842299 (3d Cir., September 11, 2023). The U.S. Supreme Court denied Appellant's petition for writ of certiorari on October 7, 2024.

5

her employment would not be terminated without just cause because she was an at-will employee and that, therefore, her claim fails as a matter of law under the doctrines of collateral estoppel and law of the case. (R.R. at 196a-99a.)

Appellees explained that they did not move for summary judgment on Appellant's common law tort claim for wrongful termination in violation of public policy claim (included in Count IV) because that claim was already dismissed by the U.S. District Court in *Javitz v. Luzerne County*, No. 3:15-CV-2443, 2017 WL 1217178, at *12 (M.D. Pa. March 31, 2017), and that judgment is entitled to full faith and credit in the state courts. (R.R. at 200a.)

Following oral argument, the trial court granted Appellees' motion, entering judgment as a matter of law in their favor and against Appellant as to all counts of the complaint by order of December 12, 2019. In its accompanying opinion, the trial court explained it was granting summary judgment on the Whistleblower Law claim (included in Count IV) on two grounds. First, it decided that Appellant could not make a prima facie case because she failed to provide any evidence that Schnelly recorded the meetings and because it was "undisputed from the record" that Schnelly attended the meetings as an AFSCME union representative, not on behalf of the County, when she was alleged to have committed the alleged Wiretap Act violation. (Rule 1925(a) op., 3/10/20, at 7.) The court emphasized, moreover, that the only reason Schnelly attended the meetings as an administrative assistant was due to her position as the AFSCME president, the County did not pay Schnelly to attend the meetings, nor was her attendance encompassed in her job duties. *Id.* at 7-8. The trial court further reasoned that Appellant did not report a "wrongdoing" attributable to Appellees, as that term was interpreted by this Court in *Gray v. Hafer*, 651 A.2d 221 (Pa. Cmwlth. 1994),

6

*aff'd per curiam*, 669 A.2d 335 (Pa. 1995), because Appellees are not charged to enforce the Wiretap Act, nor does the wrongdoing pertain to their administration.[9]

The trial court additionally based its ruling on the fact that Appellant failed to establish the causation element of a Whistleblower Law prima facie case, opining that "the record clearly shows that [Appellant] was not terminated for any reporting of wrongdoing or waste, but for issues dealing with work performance, specifically, her handling of matters involving labor unions." (Tr. ct. op., 12/16/19 at 7.)

Addressing Appellant's claim for violation of the County's Ethics Code (included in Count III), the court found that the "County's 'whistle[]blowing' policy parallels that of the Whistleblow[er Law]," and, therefore, it analyzed the claim in the same fashion. (Rule 1925(a) op., 3/10/20, at 14.) Accordingly, because it found that Schnelly was not acting in her role as a County employee but as an AFSCME representative, the trial court determined that Appellant "did not report a 'wrongdoing'

---

[9] In *Gray*, we interpreted "wrongdoing" as follows:

> In determining whether "wrongdoing" is established by reporting violations not only of crimes of the employer but of third parties, we must look to the definition of "wrongdoing." Within the definition of "wrongdoing," there is a requirement that the violation of the law or regulation be one that is designed to protect the interest of the public or employer. While the definition uses the phrase "to protect the interest of the public," and that could be interpreted to apply to any statute or ordinance as used in the context of retaliation taken by an employer because of an employee's work performance, that requirement means that a statute or regulation is of the type that the employer is charged to enforce for the good of the public or is one dealing with the internal administration of the governmental employer in question. To interpret otherwise would mean that when reporting any violation, *e.g.*, that Temple University officials received parking tickets—a matter that neither Gray nor the Auditor General has anything to do with—that would fall within the definition of wrongdoing.

651 A.2d at 224.

attributable to the [Appellees] that they are charged to enforce, as the alleged recordings of the union meetings were not taken by, nor could they be attributed to, any of the [Appellees] or their employees." *Id.* Characterizing Schnelly as an "outside entity," the trial court determined that "Appellant did not report a "wrongdoing" attributable to the [Appellees] that they are charged to enforce, as the alleged recordings of the union meetings were not taken by, nor could they be attributed to, any of the [Appellees] or their employees." *Id.* Finally, the trial court further explained that Appellant did "not present sufficient evidence to establish a causal connection between her March 2015 report and her termination[] seven months later." *Id.*

The trial court also determined that Appellees are entitled to summary judgment on Appellant's Personnel Code and Home Rule Charter claims (included in Count III) pursuant to the doctrine of collateral estoppel because the U.S. District Court had already held in *Javitz*, 2018 WL 1545589 at *6-8, that Appellant was an at-will employee, based on the unambiguous terms of the offer of employment that Appellant signed. Specifically, the trial court found that all four elements of the test under *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998), were met, namely that: (1) Appellant's breach of contract claim under the Home Rule Charter and Personnel Code was decided by the District Court; (2) the action reached final judgment upon the Third Circuit Court of Appeals' affirmation of the District Court's decision, in which no appeal was filed; (3) Appellant and Appellees were parties to that action; and (4) Appellant and Appellees had a full and fair opportunity to litigate the issue in that action. Therefore, the trial court declined to overrule the District Court's holding on that issue and determined that Appellant was precluded from raising this issue. (Tr. ct. op., 12/16/19, at 5-7.)

8

With respect to Appellant's alternative common law wrongful termination in violation of public policy claim (included in Count IV), the trial court ruled that summary judgment was appropriate as to this claim because Appellant, an at-will employee, failed to demonstrate that her discharge violated a public policy. (Rule 1925(a) op., 3/10/20, at 11.)

This appeal followed.

Appellant raises three issues. **First,** she argues that the trial court erred in granting summary judgment on her Whistleblower Law claim because (a) the issues of whether the reported wrongdoing occurred and whether Appellant was fired because of the report are disputed issues of material fact; and (b) the wrongdoing was committed by another County employee during regular work hours and thus attributable to the County. **Second,** she asserts that the trial court erred in granting summary judgment on her Ethics Code claim because (a) the Ethics Code is more expansive in providing protections to employees than the Whistleblower Law; and (b) the trial court made the same "fact finding" errors as it did in dismissing the Whistleblower Law claim. **Third**, she contends, in the alternative, that if she does not have a statutory remedy under the Whistleblower Law, she still has a viable common law claim for wrongful discharge in violation of public policy that survives summary judgment.

C. This Court's Prior Opinion Affirming the Trial Court

In *Javitz I*, this Court affirmed the order of the trial court in all respects. With regard to Appellant's Whistleblower Law claim, we found that Appellant failed to provide evidence of a specific direction not to file the report or that she would be terminated for filing the report, which we opined was required to set forth a prima facie Whistleblower Law claim. We found that the evidence Appellant did submit was insufficient to show a causal connection between the report and termination because it

9

merely reflected Appellant's "subjective perception" of her treatment after the report was made. *Javitz I* (Pa. Cmwlth., No. 115 C.D. 2020, filed July 19, 2021), 2021WL 3028160, at * 6-8. Consequently, we did not consider whether Appellant established that a wrongdoing, in fact, occurred, or whether she failed to establish wrongdoing "by a public body."

With regard to Appellant's Ethics Code claim, we first rejected Appellant's argument that the Ethics Code whistleblower provision is more expansive than the Whistleblower Law. Applying a statutory interpretation analysis, we held that the Whistleblower Law and Ethics Code whistleblower provision mirror each other, and the Ethics Code was designed in its coverage and purpose to be equivalent in coverage with the Whistleblower Law. We then concluded that, because Appellant cannot establish causation in order to state a prima facie claim under the Whistleblower Law, her claim under the Ethics Code's whistleblower provision is analogously without merit. *Id.* at *8-9.

Addressing next Appellant's common law claim for wrongful termination in violation of public policy, and relying on *Clay v. Advanced Computer Applications*, 559 A.2d 917, 920 (Pa. 1989), we held that because the Whistleblower Law provides the statutory remedy for Appellant's whistleblower claim, she cannot also bring a common law claim, sounding in whistleblowing, for wrongful termination in violation of public policy.[10] *Javitz I* (Pa. Cmwlth., No. 115 C.D. 2020, filed July 19, 2021), 2021WL 3028160, at *9-11.

_____

[10] In *Clay*, the Supreme Court analyzed the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951-63, in relation to a common law claim for wrongful termination. The Court determined that, because the PHRA provided a statutory remedy for discriminatory termination of an employee, a common law claim could not stand, based on allegations that were squarely within the PHRA.

D. Supreme Court's Remand

Appellant petitioned for allowance of appeal seeking review of the following issues only, which the Supreme Court granted on November 16, 2021:

(1) Whether this Court should allow this appeal to proceed where the Commonwealth Court in this case has rejected the well-established holding of the Supreme Court in *O'Rourke v. Commonwealth*, . . . 778 A.2d 1194, 1200 ([Pa.] 2001) and . . .[*Golaschevsky*] *v. Department of Environmental Protection*, . . . 720 A.2d 757, 759 ([Pa.] 1998)[,] and instead determined that in order to establish a prima facie case under the Whistleblower Law a litigant must establish causation with direct evidence proving (1) the County directly threatened [Appellant] with adverse employment action for filing a report or (2) specifically directed [Appellant] not to file the report, in effect nullifying the Whistleblower Law?

(2) Did the Commonwealth Court err in entering an order dismissing this appeal by limiting its finding of facts and misapplying the law established by the Supreme Court?

(Per Curiam Order, 11/16/21 at 1.)

In a decision dated May 5, 2023, the Supreme Court held that this Court erred in its application of the standard a plaintiff must meet in order to establish a prima facie retaliatory termination claim under the Whistleblower Law. In so doing, the Supreme Court held that this Court applied an overly narrow interpretation of the standard of proof required to establish a "causation connection" by requiring Appellant to show that there was specific direction or information received not to file the report of wrongdoing or that there would be adverse consequences because such report was filed. In explaining its prior holding in *Golaschevsky*, the Court held that a plaintiff's prima facie case for causation may be established by use of either "concrete facts or

11

surrounding circumstances" but not by the employee's conclusory perception of how others treated him after making a report of alleged wrongdoing. *Javitz II*, 293 A.3d at 582 (citing *Golaschevsky*, 720 A.2d at 759-60).

Addressing specifically the flaw in our rationale, the Supreme Court explained that the specific directions not to file or threat of adverse consequences were merely examples of ways that employees could make such a showing of direct evidence. *Javitz II*, 293 A.3d at 584. The Supreme Court clarified that direct evidence of specific direction or information received by a public employee not to file a report of wrongdoing or that there would be adverse consequences if a report was filed is not a mandatory prerequisite to showing causal connection. *Id.* The Supreme Court explained that to establish the causal connection for a claim of retaliatory termination under the Whistleblower Law, the plaintiff must put forth concrete facts or surrounding circumstances that a report led to her dismissal. The Court also disagreed with our classification of Appellant's evidence as merely her "subjective perception" that Appellees' post-report conduct was retaliatory or antagonistic. *Id.* at 585.

Applying that standard to this case, the Supreme Court concluded that Appellant offered "concrete evidence" in support of establishing a causal connection between her report of wrongdoing and the alleged retaliatory acts. *Id.* The Supreme Court then summarized the "concrete evidence" that it found constituted facts upon which an inference of post-report antagonism and causation could be based:

> The Commonwealth Court's wholesale classification of this evidence as [Appellant's] "subjective perception" is wrong. The only item of evidence properly characterized as "subjective perception" evidence is her characterization of the "rude behavior of her supervisors." Evidence of pre-report performance praise and the post-report relocation of [Appellant's] office, restriction of her participation in union meetings and contract negotiations, and changes in the

12

delegation of responsibilities is evidence of facts, not perception, upon which an inference of post-report antagonism and causation could be based. In its summary of [Appellant's] evidence, the Commonwealth Court neglected to include the additional evidence of post-reporting antagonism that [Appellant], as the human resources director, was denied access to personnel files that were locked away and not given a key to access them, that she was told for the first time to do the filing for the office, that Lawton instructed the District Attorney not to pursue an investigation into the report, that Parsnik ignored all of her inquiries as to what action was being taken as a result of her report, and that [Appellant] was not provided a reason for her termination, even after requesting it.

*Id*. (footnotes omitted). Concluding that we erred and misapplied the law, the Supreme Court vacated this Court's memorandum decision and order and remanded the matter to this Court to consider "the balance of the issues" raised by Appellant on appeal. *Id.* at 586, n.21.

## II. Issues

Because there have been a number of prior decisions, appeals, and remands, it is important to clarify "the balance of the issues" raised by Appellant on appeal that remain properly before us.[11] To reiterate, in this appeal, Appellant contests the trial court's rulings on her: (1) Whistleblower Law claim; (2) Ethics Code claim; and (3) common law wrongful termination in violation of public policy claim. We addressed all three issues in *Javitz I*.[12]

---

[11] Appellant did not appeal the trial court's rulings on her claims under the County's Personnel Code and Home Rule Charter.

[12] Because our now-vacated reasoning on the Whistleblower Law claim was also the basis for our ultimate decisions on the Ethics Code claim and common law claim for wrongful termination in violation of public policy, we believe the Supreme Court determined, at least by implication, that our determinations on these claims were also erroneous, and its remand therefore fairly requires our re-

**(Footnote continued on next page…)**

13

As to Appellant's Whistleblower Law claim, the Supreme Court has now ruled in *Javitz II* that Appellant met her burden under the Whistleblower Law of providing sufficient evidence to show a causal connection between her report and her termination. We, and the trial court, are bound by that determination. Thus, on this claim, we are left to resolve whether the trial court erred in concluding that, as a matter of law, Appellant cannot establish that Schnelly illegally recorded the investigative meetings, and that the alleged wrongdoing was attributable to the County because Schnelly was acting in her capacity as an AFSCME representative, not a County employee when she allegedly illegally tape-recorded the meeting without the participants' consent.[13]

---

review of those issues even though Appellant did not specifically raise them in her appeal to the Supreme Court.

This is with the following caveat. As noted above, our ruling on the Ethics Code claim in *Javitz I* had two parts. The first was a statutory interpretation analysis of the Ethics Code and a ruling on the scope of its provisions. In the second part, we concluded, based on our disposition of the Whistleblower Law claim, that Appellant's claim under the Ethics Code was likewise without merit. Only the **second** part of our analysis of the Ethics Code claim was based on the part of our decision that was vacated by the Supreme Court. Consequently, because Appellant did not appeal our decision on the Ethics Code claim, the first part of our analysis, which constituted a statutory interpretation ruling, was unaffected by the Supreme Court's decision to vacate. Therefore, that portion of our decision on the Ethics Code claim became the law of the case and will not be revisited here. *See Commonwealth v. Starr*, 664 A.2d 1326, 1331-32 (Pa. 1995) (upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court unless there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where a prior holding was clearly erroneous and would create a manifest injustice if followed). *See also Javitz II*, 293 A.3d at 576 n.7 (declining to address Appellant's request to reinstate her Ethics Code claim because her request and argument that the Ethics Code is broader than the Whistleblower Law was "beyond the scope of issues upon which [the] Court granted discretionary review").

[13] Again, because we concluded that Appellant did not establish the requisite causal connection between her report and her termination, we did not reach the issues of whether there exists a genuine issue of material fact as to whether Schnelly illegally recorded the investigatory meetings, **(Footnote continued on next page…)**

14

### III.   Analysis[14]

A motion for "[s]ummary judgment is properly granted where there is no genuine issue of material fact as to a necessary element of a cause of action and the moving party has clearly established entitlement to judgment as a matter of law." *LaChance v. Michael Baker Corp.*, 869 A.2d 1054, 1056 n.3 (Pa. Cmwlth. 2005). For the purposes of summary judgment, "[a] fact is material only if it directly affects the disposition of the case." *Pyeritz v. Commonwealth*, 956 A.2d 1075, 1079 (Pa. Cmwlth. 2008) (citing *Allen v. Colautti*, 417 A.2d 1303 (Pa. Cmwlth. 1980)). "All doubts as to the existence of a genuine issue of a material fact are to be resolved against the granting of summary judgment." *Shoats v. Commissioner*, *Pennsylvania Department of Corrections*, 591 A.2d 326, 330 (Pa. Cmwlth. 1991) (citing *Penn Center House, Inc. v. Hoffman*, 553 A.2d 900 (Pa. 1989)). "[T]he questions of whether there are material facts in issue and whether the moving party is entitled to summary judgment are matters of law." *Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.*, 106 A.3d 27, 34 n.5 (Pa. 2014).

### A. Whistleblower Law

The Whistleblower Law protects an employee who makes a good faith report of an instance of wrongdoing or waste from an adverse employment action. Section 3 of the Whistleblower Law.[15]  In other words, the Whistleblower Law

---

or whether Appellant's report of the alleged wrongdoing concerned the conduct of a collective bargaining unit's representative and not a "public body" as defined in Section 1422.

[14] "This Court's review of a trial court's order granting or denying a motion for summary judgment is limited to determining whether the trial court committed an abuse of discretion or an error of law." *Sacco v. Township of Butler*, 863 A.2d 611, 613 (Pa. Cmwlth. 2004).

[15] 43 P.S. § 1423.

prohibits an employer from discharging, discriminating against, or retaliating against an employee because such employee makes a good faith report of an instance of wrongdoing or waste. *See id.* The Whistleblower Law "aims to promote openness in governmental operations and governmental compliance with the law" by "protecting employees from adverse employer action following a report of actual or suspected violation of federal, state or local law." *Javitz II*, 293 A.3d at 578.

The "Whistleblower Law protects employees who come forth with good faith reports of wrongdoing by publicly-funded employers; it does so by prohibiting retaliatory conduct from the employer, and by providing a civil remedy for employees when employers violate the law's provisions." *Harrison v. Health Network Laboratories, Ltd. Partnerships*, 232 A.3d 674, 681 (Pa. 2020) (citing *Bailets v. Pennsylvania Turnpike Commission*, 181 A.3d 324, 333 (Pa. 2018)). Under the statute, an "employer" means "a public body, or any of the following, which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body: an individual; a partnership; an association; a corporation for profit; or, a corporation not for profit." 43 P.S. § 1422. A "public body" is defined to include, *inter alia*: "Any other body which is created by a Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." *Id.*

A "good faith report" is defined as "[a] report of . . . wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." Section 2 of the Whistleblower Law. *Id.* "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a

16

political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." *Id.* *See also Golaschevsky*, 720 A.2d at 759 ("wrongdoing" includes not only violations of statutes or regulations that are 'of the type that the employer is charged to enforce,' but violations of any federal or state statute or regulation, other than violations that are of a merely technical or minimal nature").[16]

In order to establish a wrongdoing under the Law, an employee "must demonstrate [that] she made a report of some action by her employer . . . , which, if proven, would constitute a violation of a law or regulation[;] . . . the report must be of an actual violation, not a potential or contemplated violation." *Greco v. Myers Coach Lines, Inc.*, 199 A.3d 426, 434 (Pa. Super. 2018). "Waste" is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." Section 2 of the Whistleblower Law.

Here, the trial court decided that no "wrongdoing" occurred because Appellant "failed to provide any evidence that [] Schnelly recorded the meetings," and that even if wrongdoing occurred, Appellant "failed to provide any evidence showing that [] Schnelly attended the [union] meetings on behalf of the County." (Tr. ct. op., 12/16/19, at 7.) We agree with Appellant that the trial court erred in both respects.

1) *Evidence that Schnelly Violated the Wiretap Act*

---

[16] The Supreme Court in *Golaschevsky* explained: "For example, had [the a]ppellant reported to his supervisors that fellow employees were dealing drugs out of the office, such conduct would constitute "wrongdoing," regardless of the fact that [the Department of Environmental Resources] is not charged with enforcing the drug laws." 720 A.2d at 759, n.2.

Appellant argues that whether Schnelly recorded the investigatory meetings without the consent of those present is an issue of disputed fact to be decided by the factfinder and the trial court erred by resolving this material disputed factual issue on summary judgment.

In response to Appellees' summary judgment motion, Appellant provided the following evidence that, if credited by the factfinder, would prove that Schnelly recorded the investigatory meetings. Included with the ULP charge were transcript-like documents that were in a question-and-answer format, included quotation marks, and appeared to replicate word-for-word the discussions that occurred at the investigatory meetings. (R.R. at 164a-70a.) During the meetings, Schnelly sat with her smartphone on the table and her hands folded on top of her notepad, and did not take stenographic notes during the meetings. (Javitz Deposition at 66-68; R.R. at 131a-33a.) Parsnik testified during his deposition that, after reviewing the transcripts attached to the ULP charge, he agreed with [Appellant] that "they look like somebody might have actually had a recording device in there, because they were to a T, they were very precise." (Parsnik Deposition at 148-49; R.R. at 154a-55a.)

At her deposition, Schnelly produced 26 pages of notes that she claimed to have taken during the investigative interviews and used as the basis for her transcripts attached to the ULP charge. She admitted she was not a stenographer, and not proficient in shorthand. During her deposition, Schnelly was asked to participate in an exercise in which the transcripts she had attached to her ULP charge would be read aloud, and she would do her best to take whatever notes she could. When her counsel refused, a federal district court judge directed that transcription test be permitted to go forward. (Schnelly Deposition at 88-89; R.R. at 271a-72a.) The results of that exercise relate to Schnelly's transcription abilities and are part of the record.

(Schnelly Deposition Ex. 4; R.R. at 323a-26a, 297a-322a.) Even a brief comparison reveals that the notes from the 2014 investigatory meetings are far more detailed than the notes taken during the transcription test. Schnelly's inability during her deposition to transcribe the verbal reading of administrative hearing testimony that she allegedly previously transcribed supports Appellant's contention that she had been illegally recorded by Schnelly.

Based on the foregoing, we conclude that there is sufficient evidence, if believed by the factfinder, to find that Schnelly committed the Wiretap Act violation. Thus, we conclude that the trial court erred in granting summary judgment on this basis.

2) *Wrongdoing "By a Public Body"*

We now turn to the trial court's conclusion that Appellant is unable to establish a Whistleblower Law claim because Schnelly participated in the investigatory meetings with Appellant regarding a union employee as the president of AFSCME, and she did not appear or function at those meetings on behalf of the County or as a representative of the County. The trial court reasoned that because Schnelly was acting in her capacity as a union representative, and not acting as a County employee when she allegedly illegally recorded the investigatory meetings, the alleged wrongdoing cannot be attributed to any of the Appellees or their employees.

In *Golaschevsky*, the Supreme Court explained that a report concerning the wrongdoing of a "co-employee" may qualify for whistleblower protection. *Golaschevsky*, 720 A.2d at 759 ("where, as here, the employee alleges that **there has been illegal activity within his own agency**, . . . [under] the plain language of 43 P.S. § 1422, 'wrongdoing' includes not only violations of statutes or regulations that are 'of the type that the employer is charged to enforce,' but violations of any federal or state

19

statute or regulation, other than violations that are 'of a merely technical or minimal nature'").

Here, the record demonstrates that the reported illegal activity can be attributed to a public employee of the County. There is no dispute that Schnelly was employed by the County. She was an administrative assistant in the DA's office. It is also undisputed that the alleged illegal recording occurred during the hours Schnelly worked as an administrative assistant for the DA's office. Appellant, an employee of the County, reported to her employer an alleged violation of the Wiretap Act by a fellow County employee. Thus, her report was that there was illegal wiretapping activity within her own agency, *i.e.*, the County. This evidence is sufficient to establish an instance of wrongdoing under the Whistleblower Law.

The fact that Schnelly also was president of the local union and in that capacity allegedly created an illegal recording of a fellow employee does not negate that she was, at the same time, also an employee of the County at the time she committed the alleged wrongdoing. The investigatory hearing notes prepared by Schnelly which are part of the record indicate that the alleged illegal recording of Appellant took place on December 5, 2014 (a Friday), from 10:25 a.m. until 12:40 p.m., which was during the County's normal business hours. (R.R. at 166a.) Appellant reported what she believed to be a violation of the Wiretap Act committed by a fellow employee of the County while that employee was "on the clock" during working hours.

The conclusion that Schnelly was on duty as a County employee when she recorded the meeting is further supported by the deposition testimony of the DA, who explained that she did not handle the criminal investigation based on what she perceived to be a conflict of interest "because [Schnelly] is an employee in my office." (Stephanie Salavantis Deposition at 47-48; R.R. at 239a-40a.) The DA testified:

20

Q. Why would it matter that [Schnelly is] the union representative in your decision to refer the matter to the Attorney General for investigation?

A. Well, the union representative that was in the meeting with you, that you were alleging committed this criminal activity, I felt that it was necessary because she was an employee.

Doesn't matter if she's part of the union, none of that matters.

It's she's an employee in my office, I supervise her, and I felt that, I personally felt that there was a conflict in handling an investigation such as that.

*Id.*

Thus, Appellant made a showing sufficient to establish Schnelly engaged in criminal activity while on duty as an employee of the County. Accordingly, we find the trial court erred by concluding that Appellant could not establish wrongdoing by a public body and granting summary judgment on this basis.

B. Ethics Code Violation

Section 103.05.P of the Ethics Code provides "No Covered Person shall be penalized for, nor take any action to punish another, for whistle-blowing." (R.R. at 15a.)

The trial court granted summary judgment on Appellant's Ethics Code claim because it found that Schnelly was not acting in her role as a County employee but as an AFSCME representative when she allegedly recorded Appellant and because Appellant did not present sufficient evidence to establish a causal connection between her report and her termination. These are the same grounds upon which it based its dismissal of the Whistleblower Law Claim.

Appellant argues that the trial court erred by granting summary judgment on her Ethics Code claim because, like the Whistleblower Law claim, there are genuine issues of disputed facts that cannot be decided on summary judgment. We agree. Because, as discussed above, Appellant has provided sufficient evidence of record to preclude summary judgment on her Whistleblower Law claim, Appellant has, by the same token, also done so with respect to her Ethics Code claim. Thus, the trial court erred by granting summary judgment on this claim on this basis.

That does not end our inquiry, however. We note that the Ethics Code includes a "Complaint Process" for when an individual believes an action is in violation of the Ethics Code. *See* Section 105 of the Ethics Code. (R.R. at 20a-24a.) The complaint process includes the filing of a complaint with the Accountability, Conduct, and Ethics Commission of Luzerne County (ACE Commission), preliminary inquiries, an investigation, discovery, hearing, disposition (admonition, public censure, suspension, expulsion, dismissal, removal, fines, restitution), and finally an appeal to the common pleas court.

Here, the relief Appellant seeks on her Ethics Code claim are "reinstatement, back and front pay, compensatory damages, attorney's fees and costs, punitive damages." (Complaint, at 28-29; R.R. at 56a-57a.) These are not among the penalties that can be recommended by the ACE Commission for a violation of the whistleblower provision. Under the doctrine of *expressio unius est exclusio alterius*, Luzerne County, in promulgating the Ethics Code, did not intend for "reinstatement, back and front pay, compensatory damages, attorney's fees and costs, punitive damages" to be available remedies for violations of the Ethics Code. Thus, the Ethics Code does not authorize the remedy Appellant seeks against Appellees for its violation.

22

The fact that the particular recourse Appellant seeks does not exist under the Ethics Code does not authorize the trial court or this Court to act outside its role to create a remedy that Luzerne County did not provide, or to apply a remedy that does not arise under the Ethics Code. *See Columbia County Commissioners v. Rospendowski (Workers' Compensation Appeal Board)*, 286 A.3d 436, 444-45 (Pa. Cmwlth. 2022). Because the Ethics Code does not include any mechanism, either expressly or by implication, for Appellant to be reinstated, recoup back pay or front pay, punitive damages, or attorney fees and costs, there is no reason for this claim to proceed to trial.[17] Accordingly, for this reason, we find that the trial court did not err in granting summary judgment on the Ethics Code claim. *See Medina v. Harrisburg School District*, 273 A.3d 33, 35, n.1 (Pa. Cmwlth. 2022) (stating that this Court may affirm a trial court based on a differing rationale); *Slusser v. Black Creek Township Zoning Hearing Board*, 124 A.3d 771, 772 (Pa. Cmwlth. 2015) (stating this Court may affirm the decision of the trial court on any grounds); *see also FP Willow Ridge Associates, L.P. v. Allen Township*, 166 A.3d 487, 496 (Pa. Cmwlth. 2017), *appeal denied*, 178 A.3d 106 (Pa. 2018) (stating this Court may affirm on other grounds where grounds for affirmance exist).

## C. Wrongful Termination in Violation of Public Policy

Appellant argues that the trial court erred by granting summary judgment on her common law wrongful termination claim.

A cause of action for wrongful termination is generally not available in Pennsylvania for an at-will employee. *Paul v. Lankenau Hospital*, 569 A.2d 346 (Pa. 1990). Our Supreme Court has recognized a very limited exception affording

---

[17] This, of course, does not preclude Appellant from obtaining the relief she seeks (with the exception of punitive damages, which are not available, *see O'Rourke*, 778 A.2d at 1203), as Appellant still has recourse under the Whistleblower Law.

23

terminated employees a judge-made cause of action for wrongful termination only in the rare case where the termination violates "a clear mandate of [Pennsylvania] public policy." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000).[18]

However, terminated employees may only invoke the public policy exception if there is no available statutory remedy for the aggrieved employee. *Weaver v. Harpster*, 975 A.2d 555, 568 n.10 (Pa. 2009); *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894, 899 (3d Cir. 1983).[19] Courts have specifically applied this rule to bar common law claims where a plaintiff had a cognizable claim under the Whistleblower Law. *See Angelini v. U.S. Facilities, Inc.*, 2018 WL 3155995, at *12 (E.D. Pa. June 27, 2018); *Kent v. Keystone Human Services*, 68 F. Supp. 3d 565, 568 (M.D. Pa. 2014); *Katzenmoyer v. City of Reading*, 158 F. Supp. 2d 491, 503 (E.D. Pa. 2001); *Freeman v. McKellar*, 795 F. Supp. 733, 742 (E.D. Pa. 1992). "Whether or not [a plaintiff's] claim can succeed is irrelevant; [i]t is the existence of the remedy, not the success of the statutory claim, which determines preemption." *Jacques v. Akzo International Salt,*

---

[18] *See, e.g., Highhouse v. Avery Transportation*, 660 A.2d 1374, 1378 (Pa. Super. 1995) (recognizing a public policy exception where at-will employee was fired for the filing of a workers' compensation claim); *Kroen v. Bedway Security Agency*, 633 A.2d 628, 633 (Pa. Super. 1993) (refusal to submit to a polygraph test); *Mikhail v. Pennsylvania Organization for Women in Early Recovery*, 63 A.3d 313, 319 (Pa. Super. 2013) (refusal to commit a crime); *Reuther v. Fowler & Williams, Inc.*, 386 A.2d 119, 120 (Pa. Super. 1978) (participating in jury duty).

[19] This Court acknowledges: "'Generally, decisions of federal district courts and courts of appeals are not binding on this Court, . . . but they may have persuasive value.' Unreported federal court decisions may also have persuasive value." *O'Toole v. Pennsylvania Department of Corrections*, 196 A.3d 260, 271 n.15 (Pa. Cmwlth. 2018) (quoting *Nagle v. TrueBlue, Inc.*, 148 A.3d 946, 959 n.15 (Pa. Cmwlth. 2016)). This Court relies on the federal cases cited herein for their persuasive value.

*Inc.*, 619 A.2d 748 (Pa. Super. 1993)[20] (abrogated on other grounds); *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 941 (3d Cir. 2003).

In *Clay*, the Supreme Court analyzed the Pennsylvania Human Relations Act (PHRA) in relation to a common law claim for wrongful termination. The Court determined that, because the PHRA provided a statutory remedy for discriminatory termination of an employee, a common law claim could not stand based on allegations that were squarely within the PHRA. 559 A.2d at 921. We discern no reason to not apply the Supreme Court's reasoning in *Clay* to the Whistleblower Law with regard to a common law claim for wrongful discharge.

In *Freeman*, the U.S. District Court for the Eastern District of Pennsylvania applied a similar reasoning to the Whistleblower Law. The District Court explained that because the plaintiff "ha[d] an appropriate statutory remedy under the Whistleblower [Law]," and as the General Assembly "clearly appears to have enacted that law to protect the interest of employees and society in circumstances such as those alleged by [the] plaintiff," the plaintiff could not also maintain a common law claim for wrongful discharge. 795 F. Supp. at 742. *See also Kent v. Keystone Human Services*, 68 F. Supp. 3d 565, 568 (M.D. Pa. 2014) (recognizing that courts have "barred plaintiffs from pursuing the public policy exception when the Whistleblower Law affords a remedy").

Here, as we have just held, Appellant has presented prima facie evidence of violations of the Whistleblower Law, which at the very least create issues of material

---

[20] In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues. *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

fact to preclude the grant of summary judgment.[21] Appellant's common law tort claim for wrongful termination is based on the same factual "whistleblowing" assertions which form the basis of her Whistleblower Law claim. Because the Whistleblower Law provides Appellant with a preemptive statutory remedy, her common law claim for wrongful termination is barred.

Accordingly, the Court affirms the trial court's dismissal of Appellant's common law claim for wrongful termination in violation of public policy.

### IV.    Conclusion

For the foregoing reasons, we reverse the trial court's order granting summary judgment on Appellant's Whistleblower Law claim and remand the matter for further proceedings consistent with this Opinion. We affirm the trial court's dismissal of Appellant's Ethics Code claim and her common law claim for wrongful termination in violation of public policy.

_____
PATRICIA A. McCULLOUGH, Judge

---

[21] We offer no opinion as to what preclusive effect, if any, the federal jury verdict will have on the remanded proceedings.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Donna Davis Javitz, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 115 C.D. 2020 |
| | : | |
| Luzerne County, Robert Lawton, | : | |
| and David Parsnik | : | |

## ***ORDER***

AND NOW, this 21ˢᵗ day of August, 2025, the December 18, 2019 order of the Court of Common Pleas of Luzerne County, to the extent it granted summary judgment on Donna Davis Javitz's (Javitz) Whistleblower Law claim, is hereby **REVERSED**, and the matter is **REMANDED** for proceedings consistent with this Opinion, and the portions of the order granting summary judgment on Javitz's Ethics Code claim and her common law claim for wrongful termination in violation of public policy are hereby **AFFIRMED**.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge